**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action Nos. 08-cv-02055-REB-KLM, 08-cv-02078-REB-KLM, 08-cv-02267-REB-KLM, 08-cv-02420-REB-KLM, and 08-cv-02603-REB-KLM)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

## ORDER RE: MOTIONS TO APPOINT LEAD PLAINTIFF AND COUNSEL

**Blackburn, J.**

The matters before me are (1) **Robert Dyer's Motion To Consolidate Related Cases, For Appointment as Lead Plaintiff and To Approve His Selection of Lead Counsel** [#16][1] filed November 24, 2008; (2) **Ted Karkus's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel** [#18] filed November 24, 2008; (3) **Motion of the Spectranetics Investor Group To Consolidate Related Actions; To Be Appointed Lead Plaintiff; and To Approve Proposed Lead Plaintiff's Choice of Counsel** [#19] filed November 24, 2008; (4) **Louis Lee Posner's Motion and Memorandum for Consolidation of Related Cases, Appointment of Lead Plaintiff and Selection of Counsel** (filed only in consolidated case no. 08-cv-02420 as [#6]) filed November 24, 2008.  The motions to consolidate were granted.  As to the appointment of lead plaintiff and lead counsel, I grant the Spectranetics Investor Group's motion and deny the remaining motions.

---

[1] "[#16]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

I have jurisdiction of this consolidated putative class action pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 78aa (violations of the Securities Exchange Act of 1934).

## II.  STANDARD OF REVIEW

The standards for appointment of a lead plaintiff in a class action securities litigation are governed by section 21D(a)(3) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  **See** 15 U.S.C. §§ 78a - 78oo.  First, a putative lead plaintiff must have filed with his, her, or its complaint a sworn certification that complies with the requirements of 15 U.S.C. § 78u-4(a)(2)(A).  Second, within twenty days of the filing of the complaint, the plaintiff must publish in a "widely circulated national business-oriented publication or wire service" a notice advising potential members of the class of the pendency of the action and the opportunity to move for appointment as lead plaintiff.  **Id.**, § 78u-4(a)(3)(A)(i).[2]

Finally, assuming these prerequisites are met, in an action such as this one where several separate lawsuits have been consolidated, and as soon as practicable after a decision on consolidation has been rendered, **see** 15 U.S.C. § 78u-4(a)(3)(B)(ii), the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  **Id.**, § 78u-4(a)(3)(B)(i); **see also id.**, § 78u-4(a)(3)(B)(ii) (noting that "most adequate plaintiff" standard applies equally to consolidated actions).  The statute creates a rebuttable presumption that the most

---

[2] Where, as here, "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)" 15 U.S.C. § 78u-4(a)(3)(A)(iI).

2

adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

***Id.***, § 78u-4(a)(3)(B)(iii)(I).

The PSLRA gives no guidance as to how a presumptive lead plaintiff's financial interest for purposes of making the determination required by subsection (a)(3)(B)(iii)(I)(bb) should be calculated.  ***See In re Bausch & Lomb Incorporated Securities Litigation***, 244 F.R.D. 169, 172 (W.D.N.Y. 2007), ***as modified on other grounds on denial of reh'g***, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007). Courts have used various methods in arriving at loss calculations under this provision.  ***See, e.g.***, ***In re Williams Securities Litigation***, 2002 WL 32153476 at *5 (N.D. Okla. July 8, 2002) (approving use of a ninety-day average trading price to compare putative plaintiffs' losses); ***In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 192 F.R.D. 656, 658 (D. Colo. 2000) (describing "retention value method" of loss valuation as "the most common method for determining financial interest pursuant to the PSLRA"); ***In re Olsten Corp. Securities Litigation***, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998) (applying four factors advocated by district court in ***Lax v. First Merchants Acceptance Corp.***, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11, 1997)).  The method of loss calculation does in not a significant issue in the present motions.

The PSLRA contemplates specifically that a "group of persons" may serve as lead plaintiff.  ***See*** 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This provision allows a small group

of related investors to consolidate their individual losses in seeking designation as lead plaintiff.  **See *In re Ribozyme*** , 192 F.R.D. at 659-60.  **But see *Freudenberg v. E*Trade Financial Corp.***, 2008 WL 2876373 at *4 (S.D.N.Y. July 16, 2008) (noting that court should reject a movant group if it is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'") (citation and internal quotation marks omitted).

As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a) – typicality and adequacy – impact the analysis of the lead plaintiff issue.  **See *In re Ribozyme***, 192 F.R.D. at 658.[3] "Typicality exists where the "injury and the conduct are sufficiently similar." *Id.* Although different plaintiffs may invoke different factual circumstances, typicality is present "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Id.* (citation and internal quotation marks omitted).  The requirement of adequacy is satisfied on proof of "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Id*. at 659.

If these prerequisites are met, then the presumption created by the statute may be rebutted only by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. 78u-

---

[3] Consideration of the remaining elements of Rule 23(a) is to be deferred until the motion for class certification is filed.  **See *in re Ribozyme***, 192 F.R.D. at 658.

4(a)(3)(B)(iii)(aa) & (bb).

## III.  ANALYSIS

In these consolidated securities litigation actions, the plaintiffs have sued The Spectranetics Corporation and certain individuals who were officials of Spectranetics at the allegedly relevant times.  The plaintiffs allege that the defendants violated sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder because the defendants failed to disclose to the market certain material and adverse facts about Spectranetics.  The plaintiffs seek to represent a class of plaintiffs who purchased shares of Spectranetics between April, 2007, and September, 2008, and who were damaged allegedly by the alleged failure to disclose certain material and adverse facts about Spectranetics.  Within the time required by law, notices in compliance with 15 U.S.C. § 78u-4(a)(3)(A)(i) were published on both Globe Newsire and Market Wire, both of which are national, business-oriented newswire services. [#17], Exhibit B; [#18], Exhibit C.  In addition, the parties seeking appointment as lead plaintiff have submitted the certifications required by 15 U.S.C. § 78u-4(a)(2)(A)(i) - (v).

After examining the motions filed by other parties, I conclude that both Dyer and Posner have, in effect, withdrawn their motions.  *See Posner notice of non-opposition* [#23] and *Dyer memorandum of non-opposition* [#26].  Thus, I deny both Dyer's and Posner's motions.  The two remaining movants are Karkus and the Spectranetics Investor Group (SIG).  The key issue disputed by Karkus and the SIG is which of the two properly has demonstrated that it has the largest financial interest in the relief sought by the putative class.  Again, if a person or group of persons who is a member of the proposed plaintiff class establishes that it has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the

Federal Rules of Civil Procedure, then that person or group of persons benefits from a rebuttable presumption that the person or group is the most adequate plaintiff and should be appointed as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In his motion [#18], Karkus says "Karkus purchased 379,925 shares of Spectranetics common stock and suffered losses exceeding $1,268,000 in connection therewith." *Karkus motion* [#18], p. 5. Karkus executed the certification in support of his motion as "Ted Karkus, Individually and as sole officer and sole beneficiary of Forrester Financial, LLC." *Declaration* [#20], Exhibit A, p. 1. The same designation is included in the chart of Karkus's transactions in Spectranetics stock. *Declaration* [#20], Exhibit B. In his reply, Karkus asserts that Forrester Financial, LLC, is "his wholly owned and controlled LLC." *Karkus reply* [#29], p. 3. Karkus has not sought to have Forrester Financial, LLC, designated as a lead plaintiff and does not mention Forrester Financial, LLC, in the body of his motion.

The SIG is composed of one individual, Peter J. Tortora, and two entities, the Genesee County employees' Retirement System (Genesee) and the Wayne County Employees' Retirement System (Wayne). The SIG has submitted evidence with its motion indicating that, as a group, the SIG suffered alleged losses from purchases of Spectranetics stock during the proposed class period totaling $580,825. *SIG motion* [#19], p. 10, Exhibit B. The three members of the SIG have submitted declarations indicating that they are a small and cohesive group of Spectranetics investors who can cooperate to fulfill the responsibilities of lead plaintiff, including the supervision of counsel. *SIG motion* [#19], Exhibit D.

Karkus argues that the SIG is not a proper lead plaintiff because the SIG has not demonstrated that it has the largest financial interest in the relief sought by the putative

plaintiff class. Again, Karkus claims to have suffered over 1.2 million dollars in losses on Spectranetics stock, while the SIG asserts combined losses of about 580,000 dollars. In addition, Karkus argues that the SIG is simply a group of investors "cobbled together" for the obvious purpose of qualifying as a lead plaintiff, and that such a group is not adequate to actively oversee the litigation and to monitor the effectiveness of counsel.

The SIG argues that Karkus and Forrester Financial, LLC, must be considered as separate entities when evaluating whether Karkus has demonstrated that he, individually, has the largest financial interest in the relief sought by the putative plaintiff class. The SIG asserts, citing credible evidence, that Forrester Financial, LLC, is a New Jersey limited liability company. *SIG's opposition* [#25], p. 4. Under New Jersey law, an LLC is "a separate legal entity, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation." N.J. Stat Ann. § 42:2B-11 (b). Because Forrester is a separate legal entity, the SIG argues, only Forrester can seek appointment as a lead plaintiff based on shares owned by and losses suffered by Forrester, while only Karkus can seek appointment as a lead plaintiff based on shares owned by and losses suffered by Karkus. Nowhere in his filings does Karkus specify how many Spectranetics shares were owned by him individually, and how many were owned by Forrester, nor does he specify the losses allegedly suffered by himself individually and by Forrester independently. Karkus argues that the shares owned by Karkus, as an individual, and by Forrester, as an LLC, should be considered together because Forrester Financial, LLC is "his wholly owned and controlled LLC." *Karkus reply* [#29], p. 3. Karkus argues that he has the full power and authority . . . to seek recovery of the significant losses he suffered in both his individual and Forrester

7

accounts." *Id.*, p. 5.

In each of his filings, Karkus effectively concedes that Forrester Financial, LLC, is a separate legal entity, but he otherwise fails to make any distinction between Spectranetics stock owned by Karkus individually and Spectranetics stock owned by Forrester independently, and he fails to make any distinction between alleged losses suffered by Karkus individually and by Forrester independently. Karkus does not seek to have Forrester named as a co-lead plaintiff, yet Karkus does seek to rely on losses apparently suffered by Forrester, a separate legal entity, in support of Karkus's motion for appointment as lead plaintiff. Again, that motion is asserted solely in Karkus's capacity as an individual.

In a declaration included with his reply, Karkus says "it was always my intention that I would also be acting on behalf of Forrester in a representative capacity in seeking lead plaintiff appointment. Nevertheless, even if Forrester were not a named plaintiff in the litigation, I would still have the power and authority to prosecute Forrester's claims in my own name." *Karkus reply* [#29], Exhibit 1, pp. 3-4. It is difficult to read these assertions as anything other than an effort to have Forrester act as a co-lead plaintiff, but without an explicit designation of Forrester as a lead plaintiff. Even if this supplementation of the record properly may be considered, I find that this supplementation effectively asks that I disregard the legal distinction between Karkus and Forrester.

Again, Karkus, as an individual, seeks appointment as lead plaintiff. On the present record, I cannot determine the level of Karkus's financial interest in the relief sought by the proposed class. The only way to conclude that Karkus has the largest financial interest in the relief sought by the putative plaintiff class is to conflate the

interests of two distinct legal entities, Karkus and Forrester, and to treat the two entities as Karkus individually. It may well be that Forrester's alleged losses effectively flow through to Karkus. However, even if that is true, it still would be improper simply to disregard the legal distinction between Karkus as an individual and the separate legal entity of Forrester Financial, LLC. In effect, Karkus seeks to have Forrester Financial LLC, act as a co-lead plaintiff *sub silentio*. For good reason, there is no authority for the appointment of a silent co-lead plaintiff. I conclude that Karkus has not established that he, as an individual, has the largest financial interest in the relief sought by the putative plaintiff class because he has not demonstrated the amount of his financial interest, as distinguished from that of Forrester. Absent sufficient evidence to demonstrate the level of Karkus's financial interest in the relief sought by the proposed class, Karkus is not entitled to the benefit of the rebuttable presumption that he is the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Again, the SIG has submitted evidence that the three members of the group, considered together, suffered losses from purchases of Spectranetics stock during the proposed class period totaling $580,825. The certifications and declarations submitted by the three members of the SIG specify the amount of the shares purchased and alleged losses suffered by each member of the group. In view of the fact that Karkus has not substantiated his individual losses, the SIG's submission demonstrates that the SIG has the largest financial interest in the relief sought by the putative plaintiff class. Thus the SIG is entitled to the benefit of the rebuttable presumption that it is the most adequate plaintiff. § 78u-4(a)(3)(B)(iii).

The presumption created by the statute may be rebutted only by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests

of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(aa) & (bb). Although Karkus argues that the SIG is inadequate because it is a group that was cobbled together and cannot actively oversee the litigation and monitor counsel, I conclude that the certifications and declarations submitted by the members of the SIG demonstrate that the members of the SIG can and will work together to actively oversee the litigation and to monitor the work of counsel. I conclude further that the record demonstrates that the SIG fairly and adequately will protect the interests of the putative class. Finally, no party or potential class member has argued that the SIG is subject to unique defenses that render the SIG incapable of adequately representing the putative class.

Finally, under 15 U.S.C. § 78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." The SIG has demonstrated that its putative choice for lead and liaison counsel are "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Ribozyme*, 192 F.R.D. at 659. *See SIG's motion for appointment of lead* plaintiff [#19], Exhibits E, F, & G. Accordingly, I approve Brower Piven P.C. and Labaton Sucharow LLP as co-lead counsel and the Shuman Law Firm as liaison counsel.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion of the Spectranetics Investor Group To Consolidate Related Actions; To Be Appointed Lead Plaintiff; and To Approve Proposed Lead Plaintiff's Choice of Counsel** [#19] filed November 24, 2008, is **GRANTED**;

2. That the Spectranetics Investor Group, consisting of Peter J. Tortora, the Genesee County employees' Retirement System, and the Wayne County Employees' Retirement System, is **APPOINTED** as lead plaintiff for the putative class;

3. That the law firms of Brower Piven, P.C., and Labaton Sucharow, LLP, are **APPROVED** as co-lead counsel;

4. That the Shuman Law Firm is **APPROVED** as liaison counsel;

5. That **Robert Dyer's Motion To Consolidate Related Cases, For Appointment as Lead Plaintiff and To Approve His Selection of Lead Counsel** [#16] filed November 24, 2008, is **DENIED**;

6. That **Ted Karkus's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel** [#18] filed November 24, 2008, is **DENIED**; and

7. That **Louis Lee Posner's Motion and Memorandum for Consolidation of Related Cases, Appointment of Lead Plaintiff and Selection of Counsel** (filed only in consolidated case no. 08-cv-02420 as [#6]) filed November 24, 2008, is **DENIED**.

Dated June 15, at Denver, Colorado.

                                    **BY THE COURT:**

                                    *[signature]*
                                    Robert E. Blackburn
                                    United States District Judge