IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action No. 08-cv-02055-CMA-CBS, 08-cv-02078-MSK-BNB, 08-cv-02267-MSK-CBS, 08-cv-02420-PAB, 08-cv-02603-MSK-BNB)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

## LEAD PLAINTIFF'S MOTION FOR PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), The Spectranetics Investor Group ("Lead Plaintiff"), by its undersigned attorneys, files this Motion for Partial Modification of the PSLRA Discovery Stay (the "Motion"). Under the facts and circumstances of this case, the discovery stay should be modified to permit Lead Plaintiff to obtain documents and materials furnished, or to be furnished, by the Defendants[1] to the Food and Drug Administration ("FDA"), Immigration and Customs Enforcement ("ICE"), Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), and the Department of Labor ("DOL") (collectively the "Regulators"), pursuant to the Regulators' ongoing investigations of Spectranetics.

Pursuant to Local Rule 7.1(A), counsel for Lead Plaintiff has conferred with

---

[1] Defendants include, but are not limited to, the Spectranetics Corporation ("Spectranetics" or the "Company"), John G. Schulte, Guy A. Childs, Emile J. Geisenheimer and Donald Fletcher. Pursuant to a scheduling Order issued by the Court on June 22, 2009, Lead Plaintiff's Consolidated Amended Complaint is due on August 4, 2009. Docket. No. 58. Lead Plaintiff reserves to right to add Defendants to the Amended Complaint.

counsel for the Defendants, who has not agreed to the relief requested in this Motion.

## I.     **INTRODUCTION**

### A.     **FDA and ICE Investigation**

In a press release issued on September 4, 2008,[2] Spectranetics revealed that it

had been served with a search warrant by the FDA and ICE regarding matters at issue

in Plaintiffs' Complaints.[3]  The warrant was issued by the U.S. District Court for the

District of Colorado.  The government requested information and correspondence

relating to: (i) the promotion, use, testing, marketing and sales regarding certain of the

Company's products for the treatment of in-stent restenosis, and payments made to

medical personnel and an identified institution for this application; (ii) the promotion,

use, testing, experimentation, delivery, marketing and sales of catheter guidewires and

balloon catheters manufactured by certain third parties outside of the United States; (iii)

two post-market studies completed during the period from 2002 to 2005 and payments

to medical personnel in connection with those studies; and (iv) compensation packages

for certain of the Company' s personnel. Genesee Complaint ¶ 5; *See* Goldman Decl.

Ex. B.  According to Spectranetics' November 10, 2008 10-Q, the Company intends to

fully cooperate with the investigation. *See* Goldman Decl. Ex. C.

---

[2] This press release is attached as Exhibit A to the Declaration of Mark S. Goldman, hereinafter, the "Goldman Decl."

[3] Six separate actions were filed against Spectranetics and were consolidated by this Court on January 16, 2009.  *See* Docket No. 55.  *Genesee County Employees' Retirement System v. Spectranetics Corp., et al.*, No. 1:08-cv-02603 (D. Colo. filed Sept. 1, 2008); *Hancook v. Spectranetics Corp., et al.*, No. 1:08-cv-02048 (D.C. Colo. filed Sept. 23, 2008); *Donoghue v. Spectranetics Corp., et al*, No. 1:08-cv-02055 (D. Colo. filed Sept. 24, 2008); *Dickson v. Spectranetics Corp., et al.*, No. 1:08-cv-02078 (D. Colo. filed Sept. 26, 2008); *Jacobusse v. Spectranetics Corp., et al.*, No. 1:08-cv-02267 (D. Colo. filed Oct. 17, 2008); *Posner v. Spectranetics Corp., et al.*, No. 1:08-cv-02420 (D. Colo. filed Nov. 6, 2008).  All six lawsuits make substantially similar allegations against the Company.

B.    **Class Action Securities Lawsuits**

In a press release issue on September 25, 2008, Spectranetics announced that

several securities class action lawsuits have been filed against the Company and

certain of its officers and directors in the United States District Court for the District of

Colorado. *See* Goldman Decl. Ex. D.  The lawsuits allege that the Defendants made

false and misleading statements and omissions in violation of the federal securities

laws.  According to the press release, "[t]he claims appear to relate to the matters the

Company believes are being investigated by the United States Food and Drug

Administration and the United States Immigration and Customs Enforcement, which

investigation was announced by the Company earlier this month." *Id.*

C.    **SEC Inquiry**

In a press release issued on September 25, 2008, the Company also announced

that it received a request from the Denver office of the SEC for the voluntary production

of certain documents. *See* Goldman Decl. Ex. D.  The Company stated that it intends to

"comply fully with the investigation." *Id.*

D.    **FINRA Inquiry**

In its 10-Q for the Third Quarter of 2008, the Company revealed that on

September 16, 2008, the Company received an inquiry from FINRA, a non-

governmental market regulatory entity that provides market regulation for The Nasdaq

Stock Market.  *See* Goldman Decl. Ex. C.  The inquiry relates to activity in the

Company's stock on September 4, 2008—the date that the FDA and ICE search

warrants were executed. *Id.*  The Company stated in the quarterly report that it is

3

cooperating with the inquiry. *Id.*

**E.**   **Whistleblower Lawsuit**

On September 19, 2008, Spectranetics filed a Form 8-K with the SEC disclosing

that it had been sued by a former employee, Scott Schlesinger.  *See* Goldman Decl. Ex.

E. Schlesinger's wrongful termination lawsuit alleges that he discovered that the

Company was illegally and "extensively" marketing its laser and catheters for uses that

had not been approved by the FDA; that the Company failed to report to the FDA that

tests found its laser "caused significant damage" to stents it was using in the clinical

trial; and that the Company illegally tested several products on patients without FDA

approval. Genesee Complaint ¶ 7; Goldman Decl. Ex. B.

In a letter accompanying its Answer to Schlesinger's lawsuit, filed on September

19, 2008, Spectranetics admitted that the "off-label compliance issues that Mr.

Schlesinger raised were already recognized by numerous Spectranetics employees,

including [General Counsel] Will McGuire, who even at that time had the Company's

best experts working to make sure the Company was and is in compliance." *See*

Goldman Decl. Ex. F.  The Company, however, failed to inform its shareholders of these

immensely important issues. Genesee Complaint ¶ 9; Goldman Decl. Ex. B.  The DOL

conducted an investigation into Schlesinger's allegations.  *See* Goldman Decl. Ex. F.

On June 17, 2009 Spectranetics issued a Form 8-K with the Securities and Exchange

Commission ("SEC") announcing that the Company had settled the lawsuit with

Schlesinger. *See* Goldman Decl. Ex. G.

F.     **Lead Plaintiff's Limited Request**

Lead Plaintiff respectfully requests very limited relief from the automatic discovery stay provided by the Private Securities Litigation Reform Act of 1995 ("PSLRA")[4] and seeks discovery of the limited universe of materials that Spectranetics has produced and will produce in the course of the recently-announced Regulators' investigations.[5]   The PSLRA contains an express exception to the automatic stay of discovery provision precisely in circumstances such as these. *See* 15 U.S.C. § 78u-4(b)(3)(B) (requiring all discovery be stayed during the pendency of any motion to dismiss, ***unless*** the court finds that particularized discovery is necessary to preserve evidence or to prevent undue prejudice). Lead Plaintiff's discovery request is limited, particularized and necessary to prevent undue prejudice, and granting the request would be consistent with the legislative intent of the PSLRA.

Moreover, the instant request does not trigger any of the concerns that Congress expressed as justification for the PSLRA stay.   The Complaints plead particularized facts that Plaintiffs independently developed in support of their claims.  Accordingly, this Motion is neither vexatious nor does it seek discovery merely to coerce Defendants into an unwarranted resolution or to find support for a sustainable claim. *See In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).   Likewise, Spectranetics has already produced, gathered or is in the process of producing and gathering the requested documents to the Regulators. Accordingly, Defendants would in no way be burdened by delivering the requested materials to Lead Plaintiff.  Granting

---

[4] 15 U.S.C. § 77z-1(b)(1); 15 U.S.C. § 78u-4(b)(3)(B).

[5] Lead Plaintiff's proposed document request is attached as Ex. H to the Goldman Decl.

the Motion would therefore cause no detriment to Defendants.

On the other hand, without the requested discovery, Lead Plaintiff may suffer undue prejudice by being placed at a strategic disadvantage in comparison to other parties. *See, e.g., In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (in lifting the stay, where defendant was subject of an ongoing investigation by SEC and NYSE, the court held that: "If the stay remains in place, Lead Plaintiffs will be the only interested party without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape."). Over the course of the investigation and other litigation against Defendants, other parties not subject to the PSLRA stay will likely have access to materials that form the core of these proceedings. Absent relief from the stay, Lead Plaintiff will be the only player without the ability to develop its litigation strategy in a shifting legal landscape.

Lead Plaintiff's requested discovery comports with both the language and rationale of the PSLRA; it is particularized, necessary to prevent prejudice to Lead Plaintiff and places no undue burden on Defendants. Accordingly, justice dictates that Defendants not be permitted to hide behind a statute that is not applicable to the facts and circumstances of this case.

## II.    PROCEDURAL BACKGROUND AND ALLEGATIONS

This case results from the consolidation of six related cases filed or transferred to the United States District Court for the District of Colorado. These six cases were consolidated by order of this Court on January 15, 2009. (Docket No. 55). The

Complaints allege that during the Class Period, Defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects. Specifically, Defendants failed to disclose or indicate that: (1) the Company had engaged in illicit activities related to the promotion, use, testing, marketing and sales of catheter guidewires and balloon catheters manufactured by third parties outside the United States; (2) the Company had improperly received shipments from an international source; (3) the Company had marketed and sold certain of its products for unapproved use; (4) a significant portion of the Company's revenues were generated by the sales of such products intended for unapproved uses; (5) the Company had made improper payments to medical professionals who participated in certain clinical studies for the Company; (6) the Company had engaged in questionable compensation practices for certain of its employees; (7) such questionable behavior would necessarily subject the Company to an extensive investigation by federal authorities; (8) the Company lacked adequate internal and financial controls, including effective regulatory and compliance controls; and (9) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times. *See* Jacobusse Complaint ¶ 5 (Goldman Decl. Ex. I); Genesee Complaint ¶¶ 5-7, 9-10, 53-57 (Goldman Decl. Ex. B).

When Defendants revealed that FDA and ICE agents executed a search warrant on Spectranetics headquarters as part of federal investigations into its sales and marketing practices, the market reacted immediately. In response to the news, Spectranetics' stock fell approximately 47 percent on extremely heavy volume, from

$9.00 per share to $4.73 per share, before trading was halted for the day, wiping out more than $136 million in market capitalization.  Genesee Complaint ¶ 52; Goldman Decl. Ex. B.

## III.    ARGUMENT

### A.    THE PSLRA PROVIDES EXPRESS EXCEPTIONS TO THE DISCOVERY STAY

Although the PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss…," it provides an exception when "the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. §78u-4(b)(3)(B).  The rationale behind both the PSLRA stay and its exceptions is to promote judicial economy and fairness.  The exceptions exist because the PSLRA stay was not intended to apply to cases where, as here, (1) the fraud is apparent,[6] (2) the requested materials have been, or are being, assembled, (3) the defendant has or will produce the assembled materials to other parties and/or in other venues, and (4) the requesting party will be prejudiced by delayed production.  *See, e.g., In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) ("maintaining the discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA"); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, No. 05-MD-1725, 2007

---

[6] The Court should take into consideration that the FDA investigation is criminal in nature which, as a Roth Capital Partners analyst put it, "suggests a level of impropriety beyond the typical issue of FDA clearances."  Genesee Complaint ¶ 50 (Goldman Decl. Ex. B).  Indeed, the FDA was granted and executed a search warrant on Spectranetics. *Id.* ¶ 5.  This means that the judge granting the warrant decided that "there is a fair probability that contraband or *evidence of a crime* will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added).  In addition, in its answer to the whistleblower complaint, Spectranetics admitted that the Company was aware of the promotion of off-label usage of its products. *See* Goldman Decl. Ex. F.  The Company, however, failed to inform shareholders of this important issue. Genesee Complaint ¶ 57 (Goldman Decl. Ex. B).

8

WL 518626, at *4 (E.D. Mich. Feb. 15, 2007) (noting, if Congress had intended an absolute discovery stay, it would not have authorized a judicial reprieve) (Goldman Decl. Ex. J.)[7]; *In re Enron Sec. Deriv. & "ERISA" Litig.*, Nos. MDL-1446, Civ. A. H-01-3624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002) (PSLRA was "not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case").[8] Goldman Decl. Ex. K.

Guided by these principles, federal courts have granted relief from the PSLRA stay where plaintiffs have demonstrated some or all of the following factors: (1) the plaintiff's discovery is particularized; (2) the discovery is needed to preserve evidence or prevent undue prejudice; or (3) production of the discovery will not place an undue burden on the defendant. *See LaBranche*, 333 F. Supp. 2d 178, 181-84. As explained below, each of these factors supports Lead Plaintiff's request to modify the PSLRA stay in this action. Moreover, relief from the stay here – where Defendants' misconduct is clear – in no way frustrates Congress's purposes in enacting the PSLRA.

---

[7] Pursuant to Local Rule 7.1(D), Lead Plaintiff hereby attaches to the Goldman Decl. a copy of each unpublished decision cited in support of Lead Plaintiff's Motion for Partial Modification of the PSLRA Stay.

[8] The PSLRA stay of discovery during the pendency of a motion to dismiss is an exception to the governing Federal Rules of Civil Procedure that generally require the "just, speedy and inexpensive determination of every action" and require discovery to commence "as soon as practicable." *See* Fed. R. Civ. P. 1 and 26(f). Thus, the discovery stay should be narrowly construed, especially in light of competing needs to balance concerns to protect investors and maintain confidence in the securities markets and the "general presumption for liberal discovery." *See In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002) (citing *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) ("The Supreme Court has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery.")).

9

**B.     Lead Plaintiff's Discovery Request is Particularized
        Because it Sufficiently Specifies the Target Documents**

Courts have recognized that where the party seeking discovery under the PSLRA

exception adequately specifies a clearly defined universe of documents, that request

will be considered particularized for the purposes of the PSLRA.  *See, e.g., In re Royal*

*Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004).  Similarly, a request

for documents previously produced in connection with internal and external

investigations is particularized within the meaning of the PSLRA.  *See WorldCom,* 234

F. Supp. 2d 301, 306 (S.D.N.Y. 2002).

In both *Royal Ahold* and *Worldcom*, the courts addressed motions to lift the

PSLRA discovery stay.  In both cases, the courts granted modification of the PSLRA

stay because the plaintiffs' request involved a "clearly defined universe of documents"

that the defendants had previously produced to other entities.  *Royal Ahold,* 220 F.R.D.

at 250; *WorldCom*, 234 F. Supp. 2d at 306.  These courts held that these circumstances

demonstrated that plaintiffs' request satisfied the threshold requirement of particularity.

*See id*.

Here too, Lead Plaintiff seeks the discrete universe of documents that

Defendants have already produced, or shortly will be producing, to the Regulators.[9]

This limited request is not a broad-sweeping "fishing expedition," as Lead Plaintiff has

identified the precise, narrow discovery it seeks.   *See* Lead Plaintiff's Proposed

Document Request (Goldman Decl. Ex. H).  The Company admits in its Form 8-K filed

---

[9] Lead Plaintiff only seeks these documents at a time immediately following when they have been
provided to or seized by the Regulators, to the extent not already provided or seized.

with the SEC on September 19, 2008, that the whistleblower allegations are "similar in nature to the matters the Company believes are being investigated by the Food and Drug Administration and U.S. Immigration and Customs Enforcement." Goldman Dec. Ex. E. In turn, the SEC, DOL and FINRA investigations all involve similar issues. The Complaints in this case too involve securities fraud allegations stemming from the same course of conduct that the Regulators are investigating. Lead Plaintiff's request for discovery is precise, narrow, and seeks only those documents provided by Spectranetics in connection with these related regulatory investigations. See *Vacold LLC v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001) (discovery stay modified where request "does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint"). Goldman Decl. Ex. L.

Accordingly, Lead Plaintiff's request is particularized for the purposes of the PSLRA.

**C.      Defendants Will Not Be Burdened by Producing the Requested Documents to Lead Plaintiff Because It Has or Shortly will be <u>Producing this Same Universe of Documents to the Regulators</u>**

Defendants will not be unduly burdened by producing documents to Lead Plaintiff which they have already gathered and produced, or will produce, to the Regulators.[10] *See, e.g., LaBranche*, 333 F. Supp. 2d at 181; *FirstEnergy*, 229 F.R.D. at 543. In *LaBranche*, plaintiffs moved to lift the PSLRA stay to obtain copies of documents that

---

[10] "[D]istrict courts here and elsewhere have construed 'undue prejudice' [as the term is used in the PSLRA] to mean 'improper or unfair treatment amounting to something less than irreparable harm.'" *LaBranche*, 333 F. Supp. 2d at 182 (citations omitted).

defendants had previously provided to government entities. *See* 333 F. Supp. 2d at 178. Specifically, the defendant produced documents to the SEC and the New York Stock Exchange in connection with those agencies' investigations into defendants' improper trading practices. *See id.* The *LaBranche* court lifted the PSLRA stay, after specifically noting that the previous production of documents and plaintiff's offer to pay production costs[11] demonstrated that defendants would not suffer an undue burden in producing documents that were "inevitable discovery." *Id.*

Similarly, in *FirstEnergy*, plaintiffs moved to lift the PSLRA discovery stay. In granting plaintiffs' motion, the court noted that government agencies had recently investigated the corporation, and that the corporation had responded by producing documents. *See FirstEnergy*, 229 F.R.D. at 545. The court lifted the stay after finding that the defendant could not allege any burden from producing the requested information because the defendant had already reviewed, compiled and produced the requested information to the government. *See id.* at 592-93.

Here, it is likely that Spectranetics has already culled and produced (or is in the process of culling or producing) the discrete universe of documents subpoenaed by the Regulators. As such, Spectranetics will suffer no prejudice whatsoever by simply copying and producing this same universe of documents to Lead Plaintiff. *See id.* at 545.

---

[11] Lead Plaintiff is willing to pay reasonable production costs to Defendants incurred in connection with its production of the documents requested in the proposed document request, attached as Ex. H to the Goldman Decl.

**D.    Lead Plaintiff Will Be Unduly Prejudiced Without the Requested Discovery**

Lead Plaintiff will be unduly prejudiced without the requested material because it will remain the only party unable to make informed decisions about its litigation strategy, while other parties continue to advance in their claims and investigations against Spectranetics. *In re Williams Sec. Litig.*, No. 02-cv-72H (M), 2003 WL 22013464, at *2-3 (N.D. Okla. May 22, 2003); Goldman Decl. Ex. M.

Indeed, Congress did not draft the PSLRA discovery stay to thwart the progress of legitimate lawsuits.  Thus, the statutory exception permits plaintiffs to seek discovery where delay will cause them "undue prejudice."  Recognizing the undue prejudice a plaintiff faces when excluded from discovery material being produced in parallel government or private proceedings, courts have granted plaintiffs relief from the PSLRA stay in these circumstances to level the playing field.  *See, e.g., LaBranche,* 333 F. Supp. at 183; *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913(SAS), 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009) (Goldman Decl. Ex. N); *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942 (SAS), 2005 WL 388561, at *2 (S.D.N.Y. Feb. 17, 2005) (Goldman Decl. Ex. O); *Singer v. Nicor*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. III. Apr. 23, 2003) (Goldman Decl. Ex. P); *FirstEnergy*, 229 F.R.D. at 545; *WorldCom*, 234 F. Supp. 2d at 305; *Royal Ahold*, 220 F.R.D. at 251-52.

In *In re: Semgroup Energy Partners, Sec. Litig*, Slip Op., 08-MD-1989-GKF-FHM (N.D. Okla. Feb. 18, 2009) (Goldman Decl. Ex. Q), defendants were facing civil and criminal investigations, and the management of the company had undergone an abrupt change in control.  Investors sought leave of court to lift the PSLRA discovery stay, and

13

the court found that a partial lifting of the discovery stay was warranted because "the

[l]ead [p]laintiff would otherwise be prejudiced by its inability to make informed decisions

about its litigation strategy in a 'rapidly shifting landscape.'" *Id.* at 2. Similarly,

Defendants here are the subject of *five* regulatory investigations—both criminal and civil

in nature[12].

In *Royal Ahold*, the court granted a motion to lift the PSLRA stay as well.   The

court held that the most compelling reason for allowing the discovery was the risk of

undue prejudice to the plaintiffs.  *See id*.  Specifically, the court held that without access

to documents previously produced to government investigators and that soon would be

produced to ERISA plaintiffs not subject to the PSLRA stay, the securities plaintiffs

would suffer severe disadvantage in formulating their litigation and settlement

strategies. *See Royal Ahold*,  220 F.R.D. at 252.  Lead Plaintiff in this case would

similarly be prejudiced.  *See also FirstEnergy*, 229 F.R.D. at 545.

Here, given the legal and regulatory actions ongoing against Spectranetics, Lead

Plaintiff also faces considerable prejudice if discovery remains completely stayed, as

the investigations by the Regulators arise from the same facts underlying the

Complaints. *See* Goldman Decl. Ex. E; *see also, e.g.,* Genesee Complaint ¶¶ 5-7, 9, 10,

53-57 (Goldman Decl. Ex. B); *Royal Ahold*,  220 F.R.D. at 252; *FirstEnergy*, 229 F.R.D.

at 545.

In sum, where, as here, (1) Defendants have already made their production to

---

[12] In addition, on October 22, 2008, the Company announced that John Schulte, CEO of the Company throughout the Class Period, had resigned and would be replaced by Emile Geisenheimer. *See* Goldman Decl. Ex. R.

others or are in the process of doing so, (2) Lead Plaintiff seeks only that which has

been or will be produced, (3) Lead Plaintiff is merely seeking documents that support

causes already asserted with particularity, and are not "fishing" for new causes of

action, and (4) Lead Plaintiff will suffer undue prejudice without this production, there is

sound reason to give Lead Plaintiff access to documents the Regulators have been, or

will be, given.  There is no good reason to insulate Defendants from providing the

requested discovery, and justice dictates that Defendants not be permitted to hide

behind a statute that is not applicable to this case, in order to avoid providing Lead

Plaintiff with the requested material.

## IV.    CONCLUSION

For the foregoing reasons, the Motion should be granted, and Defendants should

be required to produce the very limited number of documents requested in the proposed

document request attached as Ex. G to the Goldman Decl.


Dated: July 8, 2009

s/ Kip B. Shuman
THE SHUMAN LAW FIRM
Kip B. Shuman
Rusty E. Glenn
885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886
Kip@Shumanlawfirm.com
Rusty@Shumanlawfirm.com

*Lead Plaintiff's Liaison*
*Counsel*

LABATON SUCHAROW LLP
Mark S. Goldman
Carol C. Villegas
140 Broadway
New York, NY 10005
Telephone: (212) 907-0877
Facsimile: (212) 818-0477
mgoldman@labaton.com
cvillegas@labaton.com

*Counsel for Lead Plaintiff*

BROWER PIVEN,
A Professional Corporation
Charles J. Piven
The World Trade Center-
Baltimore
401 East Pratt Street
Suite 2525
Baltimore, Maryland 21202
Telephone:  410-332-0030
piven@browerpiven.com

*Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.


s/ Rusty E. Glenn
Rusty E. Glenn