# EXHIBIT 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# Form 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 [NO FEE REQUIRED]**
For the year ended December 31, 2006

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 [NO FEE REQUIRED]**
For the transition period from          to

Commission file number 0-19711

# THE SPECTRANETICS CORPORATION
*(Exact name of Registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **84-0997049** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

96 Talamine Court
Colorado Springs, Colorado 80907
*(Address of principal executive offices and zip code)*

Registrant's Telephone Number, Including Area Code:
(719) 633-8333

Securities registered pursuant to Section 12(b) of the Act:
None

Securities registered pursuant to Section 12(g) of the Act:
Common Stock, $.001 par value
*(Title of class)*

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act   Yes ☐   No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act   Yes ☐   No ☑

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☑   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act (Check one):
Large accelerated filer ☐      Accelerated filer ☑      Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act):   Yes ☐   No ☑

The aggregate market value of the voting stock of the Registrant, as of June 30, 2006 computed by reference to the closing sale price of the voting stock held by non-affiliates on such date, was $320,858,165. As of March 12, 2007, there were outstanding 31,043,596 shares of Common Stock.

**DOCUMENTS INCORPORATED BY REFERENCE**

Portions of the Registrant's definitive Proxy Statement for its 2007 Annual Meeting of Shareholders, to be filed with the Securities and Exchange Commission not later than April 30, 2007, are incorporated by reference into Part III as specified herein.

require FDA approval of an IDE. Both significant risk and nonsignificant risk investigational devices require approval from institutional review boards, or IRBs, at the study centers where the device will be used.

During the study, the sponsor must comply with the FDA's IDE requirements for investigator selection, trial monitoring, reporting, and record keeping. The investigators must obtain patient informed consent, rigorously follow the investigational plan and study protocol, control the disposition of investigational devices, and comply with all reporting and record keeping requirements. The IDE requirements apply to all investigational devices, whether considered significant or nonsignificant risk. Prior to granting PMA, the FDA typically inspects the records relating to the conduct of the study and the clinical data supporting the PMA application for compliance with IDE requirements.

Although the QSR does not fully apply to investigational devices, the requirement for controls on design and development does apply. The sponsor also must manufacture the investigational device in conformity with the quality controls described in the IDE application and any conditions of IDE approval that FDA may impose with respect to manufacturing.

*Postmarket.* After a device is placed on the market, numerous regulatory requirements apply. These include: the QSR, labeling regulations, the FDA's general prohibition against promoting products for unapproved or "off-label" uses, the Medical Device Reporting regulation (which requires that manufacturers report to the FDA if their device may have caused or contributed to a death or serious injury or malfunctioned in a way that would likely cause or contribute to a death or serious injury if it were to recur), and the Reports of Corrections and Removals regulation (which requires manufacturers to report recalls and field actions to the FDA if initiated to reduce a risk to health posed by the device or to remedy a violation of the FDCA).

The FDA enforces these requirements by inspection and market surveillance. If the FDA finds a violation, it can institute a wide variety of enforcement actions, ranging from a public warning letter to more severe sanctions such as:

- fines, injunctions, and civil penalties;
- recall or seizure of products;
- operating restrictions, partial suspension or total shutdown of production;
- refusing requests for 510(k) clearance or PMA of new products;
- withdrawing 510(k) clearance or PMAs already granted; and
- criminal prosecution.

We cannot assure that the FDA will approve our current or future PMA applications or supplements or 510(k) applications on a timely basis or at all. The absence of such approvals could have a material adverse impact on our ability to generate future revenue.

Labeling and promotional activities are also subject to scrutiny by the FDA and, in certain instances, by the Federal Trade Commission. The FDA actively enforces regulations prohibiting marketing of products for unapproved uses.

International sales of our products are subject to foreign regulations, including health and medical safety regulations. The regulatory review process varies from country to country. Many countries also impose product standards, packaging and labeling requirements, and import restrictions on devices. Exports of products that have been approved by the FDA do not require FDA authorization for export. However, foreign countries often require a FDA Certificate to Foreign Government verifying that the product complies with FDCA requirements. To obtain a Certificate to Foreign Government, the device manufacturer must certify to the FDA that the product has been granted approval in the United States and that the manufacturer and the exported products are in substantial compliance with the FDCA and all applicable or pertinent regulations. The FDA may refuse to issue a Certificate to Foreign Government if significant outstanding QSR violations exist.

With respect to our international operations, in November 1994, we received ISO 9001 certification from TÜV, which allows us to market our products in the European Community within compliance of the manufacturing quality regulations. In addition, we received CMDCAS (Canadian) certification by TÜV

17

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Colorado Springs, State of Colorado, on this 15th day of March, 2007.

THE SPECTRANETICS CORPORATION

By: /s/ John G. Schulte
John G. Schulte
President and Chief Executive Officer

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the Registrant in the capacities and on the date indicated.

| Signature | Title | Date |
| --- | --- | --- |
| /s/ John G. Schulte<br>John G. Schulte | President and Chief Executive Officer, Director (Principal Executive Officer) | March 15, 2007 |
| /s/ Guy A. Childs<br>Guy A. Childs | Vice President, Chief Financial Officer (Principal Financial and Accounting Officer) | March 15, 2007 |
| /s/ Emile J. Geisenheimer<br>Emile J. Geisenheimer | Director and Chairman of the Board of Directors | March 15, 2007 |
| /s/ David G. Blackburn<br>David G. Blackburn | Director | March 15, 2007 |
| /s/ R. John Fletcher<br>R. John Fletcher | Director | March 15, 2007 |
| /s/ Martin T. Hart<br>Martin T. Hart | Director | March 15, 2007 |
| /s/ Joseph M. Ruggio, M.D.<br>Joseph M. Ruggio, M.D. | Director | March 15, 2007 |
| /s/ Craig M. Walker, M.D.<br>Craig M. Walker, M.D. | Director | March 15, 2007 |