IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action Nos. 08-cv-02055-REB-KLM, 08-cv-02078-REB-KLM, 08-cv-02267-REB-KLM, 08-cv-02420-REB-KLM, and 08-cv-02603-REB-KLM)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

**ORDER DENYING MOTION FOR RECONSIDERATION**

**Blackburn, J.**

This matter is before me on **Lead Plaintiff Movant Ted Karkus's Motion for Reconsideration** [#59][1] filed June 29, 2009. The Spectranetics Investor Group filed a response [#64] and Ted Karkus filed a reply [#74]. I deny the motion.

**I. REQUEST FOR RECONSIDERATION**

On June 15, 2009, I entered an **Order re: Motions To Appoint Lead Plaintiff and Counsel** [#55]. In that order, I denied Ted Karkus's motion to be appointed lead plaintiff [#18]. In his present motion to reconsider, Karkus seeks reconsideration of my order [#55], arguing that he should be appointed the lead plaintiff in this case. The three usual bases for reconsideration of an order are (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. **Servants of the Paraclete v. Does**, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). A motion for reconsideration is not appropriate when the movant seeks to revisit issues already addressed or to advance arguments

---

[1] "[#59]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

that could have been raised in prior briefing.  *Id*.  Karkus argues that I should reconsider my previous order [#55] to correct clear error and prevent manifest injustice.

15 U.S.C. § 78u-4(a)(3)(B)(iii) provides the three key factors a court must consider when determining what person or group of persons should be appointed lead plaintiff in a proposed class action case involving allegations of securities fraud subject to the requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA). The key factor at issue here is a determination of which plaintiff seeking appointment as lead plaintiff in this case "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In his motion for appointment as lead plaintiff [#18], Karkus sought, as an individual, to be appointed as lead plaintiff.  Karkus's reply in support of that motion demonstrated that Karkus, as an individual, made some investments in Spectranetics stock.  In addition, Forrester Financial, LLC, a New Jersey LLC, also made investments in Spectranetics stock.  For the purposes of determining which proposed lead plaintiff has the largest financial interest in the relief sought by the class, Karkus argued that the shares owned by Karkus, as an individual, and by Forrester, as an LLC, should be considered together because Forrester Financial, LLC, is "his wholly owned and controlled LLC." *Karkus reply* [#29], p. 3.  Karkus asserts that a combined consideration of his individually owned shares and the shares owned by Forrester is appropriate because Forrester's losses flowed directly to Karkus, and Karkus "has the full power and authority . . . to seek recovery of the significant losses he suffered in both his individual and Forrester accounts." *Id.*, p. 5.

In my order denying Karkus's motion [#18] for appointment as lead plaintiff, I concluded, *inter alia*, as follows:

2

> On the present record, I cannot determine the level of Karkus's financial interest in the relief sought by the proposed class. The only way to conclude that Karkus has the largest financial interest in the relief sought by the putative plaintiff class is to conflate the interests of two distinct legal entities, Karkus and Forrester, and to treat the two entities as Karkus individually. It may well be that Forrester's alleged losses effectively flow through to Karkus. However, even if that is true, it still would be improper simply to disregard the legal distinction between Karkus as an individual and the separate legal entity of Forrester Financial, LLC. In effect, Karkus seeks to have Forrester Financial LLC, act as a co-lead plaintiff *sub silentio*. For good reason, there is no authority for the appointment of a silent co-lead plaintiff. I conclude that Karkus has not established that he, as an individual, has the largest financial interest in the relief sought by the putative plaintiff class because he has not demonstrated the amount of his financial interest, as distinguished from that of Forrester. Absent sufficient evidence to demonstrate the level of Karkus's financial interest in the relief sought by the proposed class, Karkus is not entitled to the benefit of the rebuttable presumption that he is the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

*Order re: Motions To Appoint Lead Plaintiff and Counsel* [#55], filed June 15, 2009, pp. 8-9. In his present motion, Karkus argues that my conclusion, quoted above, constitutes clear error and manifest injustice. I disagree.

Karkus argues that established authority consistent with the holding in **Grubb v. FDIC**, 868 F.2d 1151 (10th Cir. 1989), supports his contention that Karkus and Forrester should be considered together for the purpose of the lead plaintiff analysis under 15 U.S.C. § 78u-4. In **Grubb**, the United States Court of Appeals for the Tenth Circuit held that an individual had standing to pursue securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)(5) of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5, even though the record owner of the securities in question was a holding company and not the individual plaintiff. 868 F.2d at 1162. Grubb, the individual plaintiff, acting with one other person, "formed the holding company as sole shareholders, *after* . . . the alleged representations" were made. *Id*. (emphasis in original). The holding company was

3

formed "for the sole purpose of buying" the securities in question. *Id*. Given these and other circumstances, the *Grubb* court concluded that Grubb, as an individual, had standing to assert securities fraud claims because "(l)ooking at this transaction realistically, we believe the above factors indicate that Grubb was the actual purchaser" of the securities in question. *Id*. The court noted, however, that "being the sole shareholder of the defrauded company does not alone confer standing upon that shareholder as an individual . . . ." *Id*. n. 14.

Notably, *Grubb* concerned Gurbb's standing to assert securities fraud claims and not a determination of Grubb's suitability as a lead plaintiff in a securities fraud class action. Karkus argues that if Grubb had standing to assert securities fraud claims on his own behalf, even though the securities in question were owned by a holding company, then Karkus properly can seek designation as lead plaintiff based on Karkus's individual ownership of Specranetics stock combined with Forrester's holdings of Spectranetics stock.

Assuming that the standing analysis in *Grubb* is instructive on the issue of a determination of the proper lead plaintiff under 15 U.S.C. § 78u-4, the *Grubb* analysis does not support Karkus's position. Again, the *Grubb* court concluded that "being the sole shareholder of the defrauded company does not alone confer standing upon that shareholder as an individual . . . ." *Id*. n. 14. Further, the *Grubb* court relied, *inter alia*, on the fact that the holding company at issue in *Grubb* was formed "for the sole purpose of buying" the securities in question and was formed after the alleged misrepresentations in question were made. *Id*. at 1162. Karkus relies on his sole ownership of Forrester as the basis for his contention that he should be permitted to combine his losses, as an individual, and Forrester's losses, as an LLC, to establish that

4

Karkus has the largest financial interest in the relief sought by the class. Notably, there is no indication in the record that Forrester Financial LLC was formed for the sole purpose of buying Spectranetics stock or that it was formed after the alleged misrepresentations at issue in the present case were made. Karkus does not cite other factors as additional support for his contention that the alleged losses of Karkus and Forrester should be considered together in the lead plaintiff analysis. If being the sole shareholder of Forrester, without more, does not confer standing on Karkus under the standing analysis adopted in *Grubb*, then the *Grubb* standing analysis does nothing to support Karkus's contention that he should be permitted, as an individual, to combine his own losses and Forrester's losses to show that Karkus, acting as an individual only, has the largest financial interest in the relief sought by the class.

Again, in my previous order [#55], I concluded that

> Karkus has not established that he, as an individual, has the largest financial interest in the relief sought by the putative plaintiff class because he has not demonstrated the amount of his financial interest, as distinguished from that of Forrester. Absent sufficient evidence to demonstrate the level of Karkus's financial interest in the relief sought by the proposed class, Karkus is not entitled to the benefit of the rebuttable presumption that he is the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Given the holding in *Grubb* and my review of Karkus's arguments in his motion to reconsider and his reply, I conclude that the determination I made in my **Order re: Motions To Appoint Lead Plaintiff and Counsel** [#55] filed June 15, 2009, is not clear error and reconsideration of that order is not necessary to prevent manifest injustice. Karkus's motion for reconsideration [#59] is denied.

## II.  REQUEST FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)

If I deny Karkus's request for appointment as lead counsel, as I have, Karkus

5

asks that I certify this order, and my previous order [#55] denying his motion for appointment as lead plaintiff, for an immediate appeal under 28 U.S.C. § 1292(b). Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

The terms of the statute admit of four criteria that must be satisfied before an issue may be certified for pretrial appeal: (1) the action must be a civil action; (2) the court must conclude that the order involves a controlling question of law; (3) there must be substantial ground for difference of opinion as to the resolution of that question; and (4) it must appear that an immediate appeal from the order may materially advance the ultimate termination of the litigation. ***In re Grand Jury Proceedings June 1991***, 767 F.Supp. 222, 223 (D. Colo. 1991). I have discretion in determining whether to certify an order for interlocutory appeal under the statute. ***See Swint v. Chambers County Commission***, 514 U.S. 35, 47, 115 S.Ct. 1203, 1210, 131 L.Ed.2d 60 (1995); ***Etienne v. Wolverine Tube, Inc.***, 15 F.Supp.2d 1060, 1062 (D. Kan. 1998). Appeal certification under § 1292(b) "should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." ***State of Utah By and Through Utah State Dept. of Health v. Kennecott Corp.***, 14 F.3d 1489, 1495 (10th Cir. 1994) (citation and internal quotation omitted).

Assuming *arguendo* that the first three criteria of the statute are satisfied here, I conclude that Karkus has not shown that certifying an interlocutory appeal in this case

will advance materially the ultimate termination of this litigation. Most important, an interlocutory resolution of the lead plaintiff issue by the United States Court of Appeals for the Tenth Circuit will not cause any of the parties to abandon any of their claims and defenses, reach a settlement of any or all of the plaintiffs' claims more quickly, or otherwise cause the ultimate resolution of the plaintiffs' claims to occur more quickly than it would otherwise. In other words, resolution of the claims at issue in this case are not dependent on who is designated as the lead plaintiff.

Karkus argues that if he must wait to appeal the lead plaintiff issue until after a final judgment in this case, and if he prevails on this issue on appeal, then a reversal by the Tenth Circuit "could require the litigation to start anew," resulting in a substantial delay. *Motion for reconsideration* [#59], p. 14. While this scenario may be a conceivable possibility, the existence of this possibility does not mean that "extended and expensive proceedings probably can be avoided by immediate final" resolution of the lead plaintiff issue which Karkus seeks to appeal. **Kennecott Corp**., 14 F.3d at 1495. The scenario Karkus paints is possible, but not probable. Karkus's motion for certification under § 1292(b) is denied.

### III. ORDER

**THEREFORE, IT IS ORDERED** that **Lead Plaintiff Movant Ted Karkus's Motion for Reconsideration** [#59] filed June 29, 2009, is **DENIED**.

Dated November 19, 2009, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

7