**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action No. 08-cv-02055-CMA-CBS, 08-cv-02078-MSK-BNB, 08-cv-02267-MSK-CBS, 08-cv-02420-PAB, 08-cv-02603-MSK-BNB)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS LEAD PLAINTIFF'S
CONSOLIDATED CLASS ACTION COMPLAINT**

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................2

ARGUMENT ............................................................................................................3

I.      Plaintiff Cannot End Run the FDCA's Bar On Private Right of Actions. ................3

II.     There Is No Duty To Accuse Yourself Of Illegal Conduct. ....................................5

III.    Plaintiff's Effort To Allege a Misleading and False Statement Fails. ......................7

        A.      Spectranetics' Product Liability Risk Disclosure Was Not
                Misleading. ..................................................................................8

        B.      Spectranetics' Public Statements About Its Products Were Not
                Misleading. ................................................................................ 10

        C.      Spectranetics' Accurate Disclosure of Past Revenue Results Were
                Not Misleading............................................................................ 13

IV.     Plaintiff Has Failed To Allege Scienter Given That It Can Offer No Motive Or
        Particularized Facts Demonstrating Intent To Defraud. ..................................... 14

        A.      Defendants Acquired Stock During The Class Period Thereby
                Undermining Any Inference Of Scienter.................................................. 14

        B.      Plaintiff Has Not Alleged Recklessness That Reflects A Danger Of
                Misleading Investors. .............................................................................. 15

        C.      Plaintiff Failed To Allege That Defendants Acted To Mislead
                Spectranetics' Stockholders. .................................................................... 19

V.      Plaintiff Failed To Allege Loss Causation Because Disclosure of Investigation
        Does Not Equate to Disclosure of Wrongdoing.................................................... 21

VI.     Alternative Theories Cannot Save Plaintiff's Failed Rule 10b-5 Claims. ............. 22

        A.      Defendants Cannot Be Liable For Statements They Did Not Make. ........ 22

        B.      Plaintiff Cannot Relabel And Save Its Theory As A Claim Under Rules
                10b-5(a) and (c). ..................................................................................... 23

        C.      Plaintiff Has Failed to Plead Control Person Liability. .............................. 25

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

Adams v. Kinder-Morgan, Inc.,
    340 F.3d 1083 (10th Cir. 2003) .................................................................8

Anderson v. Abbott Labs.,
    140 F. Supp. 2d 894 (N.D. Ill. 2001) .........................................................6

Ashcroft v. Iqbal,
    129 S. Ct. 1937, 1940 (2009)....................................................................5

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................5

Braintree Labs., Inc. v. Nephro-Tech, Inc.,
    No. 96-2459-JWL, 1997 WL 94237 (D. Kan. Feb. 26, 1997) ....................3

Chan v. Orthologic Corp.,
    No. Civ. 96-1514 PHX RCV, 1998 WL 1018624 (D. Ariz. Feb. 5, 1998)..........6, 7, 9

City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.,
    388 F. Supp. 2d 932 (S.D. Ind. 2005) .....................................................21

City of Phila. v. Fleming Cos.,
    264 F.3d 1245 (10th Cir. 2001)............................................. 14, 15, 16, 19

Cottrell, Ltd. v. Biotrol Int'l, Inc.,
    191 F.3d 1248 (10th Cir. 1999)........................................................3, 4, 5

Cozzarelli v. Inspire Pharm., Inc.,
    549 F.3d 618 (4th Cir. 2008) ..................................................................19

Desai v. Deutsche Bank Sec. Litig.,
    573 F.3d 931 (9th Cir. 2009) ..................................................................24

Dura Pharm., Inc. v. Broudo,
    544 U.S. 336 (2005)................................................................................21

Elam v. Neidorff,
    544 F.3d 921 (8th Cir. 2008) ..................................................................16

Eshelman v. Orthoclear Holdings, Inc.,
    No. C 07-1429 JSW, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009) ............................ 18

Ezra Charitable Trust v. Tyco Int'l, Ltd.,
    466 F.3d 1 (1st Cir. 2006) ....................................................................................... 16

Funke v. Life Fin. Corp.,
    237 F. Supp. 2d 458 (S.D.N.Y. 2002) ..................................................................... 20

Greenstone v. Cambex Corp.,
    777 F. Supp. 88 (D. Mass. 1991) ............................................................................ 13

Higginbotham v. Baxter Int'l, Inc.,
    495 F.3d 753 (7th Cir. 2007) ................................................................................... 17

Horizon Asset Mgmt. Inc. v. H & R Block, Inc.,
    580 F.3d 755 (8th Cir. 2009) ................................................................................... 15

In re Amgen Inc. Sec. Litig.,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) .................................................................... 4

In re AXIS Capital Holdings Ltd., Sec. Litig.,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) ....................................................................... 6

In re Carter-Wallace, Inc. Sec. Litig.,
    150 F.3d 153 (2d Cir. 1998) .................................................................................... 12

In re Ceridian Corp. Sec. Litig.,
    542 F.3d 240 (8th Cir. 2008) ................................................................................... 19

In re Citigroup, Inc. Sec. Litig.,
    330 F. Supp. 2d 367 (S.D.N.Y 2004) ................................................................. 6, 13

In re Digi Int'l Inc. Sec. Litig.,
    6 F. Supp. 2d 1089 (D. Minn. 1998) ........................................................................ 20

In re Epogen and Aranesp Off-Label Mktg. & Pracs. Litig.,
    590 F. Supp. 2d at 1287-89 (C.D. Cal. 2008) .......................................................... 5

In re Epogen and Aranesp Off-Label Mktg. & Pracs. Litig.,
    No. MDL 08-1934 (AGRs), 2009 WL 1703285 (C.D. Cal. June 17, 2009) ............... 5

In re Forest Labs. Sec. Litig.,
    No. 05-2827, 2006 U.S. Dist. LEXIS 97475 (S.D.N.Y. July 19, 2006) ...................... 4

*In re FX Energy, Inc. Sec. Litig.*,
    Nos. 2:07-CV-874 CW, 2:07-CV-938 DAK, 2:07-CV-966 DAK, 2009 WL 1812828 (D. Utah June 25, 2009) ..................................................................................................17

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .....................................................................................4

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007)......................................................................21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................................13

*In re Maxim Integrated Prod., Inc. Sec. Litig.*,
    639 F. Supp. 2d 1038 (N.D. Cal. 2009).....................................................................21

*In re Micron Tech., Inc. Sec. Litig.*,
    No. CV 06-85-S-BLW, 2009 U.S. Dist. LEXIS 13793 (D. Id. Feb. 23, 2009)..............24

*In re Nat'l Century Fin. Enter. Inc.*,
    504 F. Supp. 2d 287 (S.D. Ohio 2007).......................................................................23

*In re Nat'l Century Fin. Enter., Inc.*,
    553 F. Supp. 2d 902 (S.D. Ohio 2008).......................................................................25

*In re Nature's Sunshine Products Sec. Litig.*,
    No. 2:06-CV 267 TS, 2008 WL 4442150 (D. Utah Sept. 23, 2008)............................24

*In re Pfizer Inc. Sec. Litig.*,
    584 F. Supp. 2d 621 (S.D.N.Y. 2008) .........................................................................4

*In re Raytheon Sec. Litig.*,
    157 F. Supp. 2d 131 (D. Mass. 2001) ........................................................................20

*In re Sofamor Danek Group, Inc.*,
    123 F.3d 394 (6th Cir. 1997)............................................................................ passim

*In re Sun Healthcare Group, Inc. Sec. Litig.*,
    181 F. Supp. 2d 1283 (D.N.M. 2002) .........................................................................23

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ........................................................................20

*In re United Am. Healthcare Corp.*,
    No. 2:05-CV-72112, 2007 WL 313491 (E.D. Mich. Jan. 30, 2007) ..............................6

In re United Telecomms., Inc. Sec. Litig.,
   781 F. Supp. 696 (D. Kan. 1991) ............................................................................16

In re Williams Sec. Litig. – WCG Subclass,
   558 F.3d 1130 (10th Cir. 2009) ..............................................................................21

Ind. St. Dist. Council v. Omnicare, Inc.,
   583 F.3d 935 (6th Cir. 2009) ................................................................................6, 9

Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.,
   537 F.3d 527 (5th Cir. 2008) ..................................................................................17

Joseph v. Wiles,
   223 F.3d 1155 (10th Cir. 2000) ..............................................................................24

Kapur v. Usana Health Scis., Inc.,
   No. 2:07-CV-00177DAK, 2008 WL 2901705 (D. Utah July 23, 2008) ........................6

Kushner v. Beverly Enters., Inc.,
   317 F.3d 820 (8th Cir. 2003) ..................................................................................19

Lewis v. Chrysler Corp.,
   949 F.2d 644 (3d Cir. 1991) .....................................................................................6

Ley v. Visteon Corp.,
   543 F.3d 801 (6th Cir. 2008) ..................................................................................17

Lopes v. Viera,
   543 F. Supp. 2d 1149 (E.D. Cal. 2008) .....................................................................6

Maher v. Durango Metals, Inc.,
   144 F.3d 1302 (10th Cir. 1998) ..............................................................................25

McDonald v. Kinder-Morgan, Inc.,
   287 F.3d 992 (10th Cir. 2002) ...........................................................................11, 13

McNamara v. Bre-X Minerals Ltd.,
   57 F. Supp. 2d 396 (E.D. Tex. 1999) ......................................................................10

Metzler Inv. GMBH v. Corinthian Colleges, Inc.,
   540 F.3d 1049 (9th Cir. 2008) ................................................................................21

Oran v. Stafford,
   226 F.3d 275 (3d Cir. 2000) ...............................................................................6, 12

Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.,
    552 U.S. 148 (2008)............................................................................................23, 24

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)...................................................................................................14

Zaluski v. United Am. Healthcare Corp.,
    527 F.3d 564 (6th Cir. 2008)...............................................................................12, 19

Zucco Partners, LLC v. Digimarc Corp.,
    552 F.3d 981 (9th Cir. 2009)...............................................................................16, 19

LAX01_31507851v7_340442-00002 12/17/2009 5:17 PM

## **INTRODUCTION**

Plaintiff's Opposition confirms exactly what Defendants explained in their opening brief: Plaintiff is trying to assert a Congressionally-prohibited private claim for violation of the FDCA based on alleged off-label promotion of Spectranetics medical devices through the guise of the securities laws. Plaintiff can only attempt this gambit by ignoring much of Defendants' motion including that:

- The FDA's rules concerning off-label uses of medical devices are vague and ambiguous thereby requiring this Court – in contravention of specific Tenth Circuit authority – to determine whether Defendants' conduct violated the FDCA before deciding whether they violated the securities laws.

- Courts uniformly hold that defendants do not have a duty to accuse themselves of uncharged unlawful conduct merely because such conduct might be material.

- Defendants do not have a duty to accuse themselves of wrongdoing simply by making true statements whose truthfulness is entirely unaffected by the alleged wrongdoing.

These principles require dismissal of the CAC. They establish Plaintiff's lack of standing, show that Defendants had no duty to disclose any claimed improper off-label promotion, and prove that Defendants did not make any false or misleading statements.

Plaintiff's purported claims of securities fraud also fail because Plaintiff has not properly alleged that any of the Defendants acted with scienter. The Opposition acknowledges that nearly all of the Individual Defendants purchased – and none sold – stock during the class period. Moreover, Plaintiff's conclusory claims that Defendants violated complex FDA regulations cannot be credited given that the Private Securities Litigation Reform Act of 1995 requires particularized and specific allegations of fact.

2

Plaintiff's Opposition also confirms that they have not alleged loss causation.  Plaintiff admits that Spectranetics' stock price fell not because of any revelation of any truth concerning allegedly concealed information but rather because Spectranetics' stockholders were concerned about the impact of the FDA investigation on Spectranetics' operations.

## ARGUMENT

I.    **Plaintiff Cannot End Run the FDCA's Bar On Private Rights of Action.**

Plaintiff admits that this case involves alleged violations of the FDCA.  Indeed, Plaintiff mentions the FDA and/or FDA rules and regulations on practically every page of the Opposition (including 16 times in the first three pages of the brief) while the references to SEC rules and regulations are few and far between (including only twice in the first three pages of the brief).  Nor does Plaintiff dispute that Congress barred all private claims to enforce the FDCA leaving exclusive enforcement to the FDA.  (Opp. 10-12.)  Nevertheless, Plaintiff argues that it has standing to pursue its securities claims by ignoring the specific framework adopted by the Tenth Circuit to determine whether a cause of action is merely a vehicle for an improper assertion of an FDCA violation.  The Tenth Circuit has clearly held that:

> claims that require direct interpretation and application of the FDCA are not properly recognized because such matters are more appropriately addressed by the FDA, especially in light of Congress's intention to repose in that body the task of enforcing the FDCA.

Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1255 (10th Cir. 1999) (quoting Braintree Labs., Inc. v. Nephro-Tech, Inc., No. 96-2459-JWL, 1997 WL 94237, at **6-7 (D. Kan. Feb. 26, 1997)).

3

Plaintiff does not discuss <u>Biotrol</u> or <u>Braintree</u> anywhere in the Opposition. These cases are dispositive in the circumstances of this case.[1] This Court will have to determine whether Spectranetics' conduct constituted unlawful "off-label" promotion before it can decide whether Defendants violated the securities laws by failing to disclose such conduct. This necessarily requires the Court to interpret and apply the FDCA and specifically the FDA's vague rules concerning off-label promotion that seek to balance a doctor's freedom to prescribe an approved product for any use, the FDA's desire to prevent misbranding or mislabeling, and the freedom of speech embodied in the First Amendment. (MtD 9-12.) What happens if this Court reaches a conclusion with which the FDA disagrees? What happens if the FDA determines that Spectranetics' conduct was legal but the Court decides otherwise or vice-versa? Whose instruction should Spectranetics follow in the future? Should all the other companies that face these issues conform their conduct to the guidance from this Court or the FDA? Should companies file declaratory relief actions in Court each time they have a question or should they call the FDA?

Plaintiff cannot avoid these complexities by simply ignoring them (Plaintiff's apparent tactic, as Plaintiff's Opposition nowhere addresses the ambiguity in the FDA's rules). Plaintiff also cannot avoid these complexities by merely asserting that

---

[1] Plaintiff's reliance on a few cases from outside the Tenth Circuit cannot confer standing. The court in <u>In re Amgen Inc. Sec. Litig.</u>, 544 F. Supp. 2d 1009 (C.D. Cal. 2008) asked the right question – "whether Defendants violated securities laws by improperly marketing [the products] for off-label uses" – but answered it incorrectly because it was not bound by Tenth Circuit law holding that "claims that require direct interpretation and application of the FDCA are not properly recognized." <u>See</u> <u>Id</u>. at 1033. The other cases cited by Plaintiff are inapposite as they do not consider whether the claims at issue involved interpretation and application of the FDCA. <u>See, e.g.</u>, <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049 (9th Cir. 2008); <u>In re Forest Labs. Sec. Litig.</u>, No. 05-2827, 2006 U.S. Dist. LEXIS 97475 (S.D.N.Y. July 19, 2006); <u>In re Pfizer Inc. Sec. Litig.</u>, 584 F. Supp. 2d 621 (S.D.N.Y. 2008)

Spectranetics' conduct "circumvented clearly defined FDA rules and regulations" because such assertions are unsupported – and therefore impermissible -- legal conclusions. (Opp. 2; see also id. 3-4, 10); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940, 1949-50 (2009). In short, Plaintiff's claims are predicated upon and so intertwined with alleged violations of the FDCA that the Court cannot decide whether Defendants committed securities fraud without first deciding whether they violated the FDCA. See Biotrol, 191 F.3d at 1255; see also In re Epogen and Aranesp Off-Label Mktg. & Pracs. Litig., 590 F. Supp. 2d at 1287-89, 1292 (C.D. Cal. 2008); In re Epogen and Aranesp Off-Label Mktg. & Pracs. Litig., No. MDL 08-1934 (AGRs), 2009 WL 1703285, at **5-7 (C.D. Cal. June 17, 2009). Plaintiff's claims must be dismissed on this ground alone.

## II.    There Is No Duty To Accuse Yourself Of Illegal Conduct.

Plaintiff acknowledges that companies have **no** duty to disclose all material information in their possession to stockholders because otherwise companies would bury their stockholders in an avalanche of limitless banality. Rather, companies need only disclose what is required by the SEC and what is necessary to ensure that statements actually made are not misleading. (Opp. 12-13; MtD 14.) Plaintiff also implicitly admits that Spectranetics was not obligated to disclose any potential wrongdoing under Item 103 of SEC Regulation S-K which only requires that companies disclose any "material pending legal proceedings" and "any such proceedings known to be contemplated by governmental authorities." Plaintiff does not even address this

provision in the Opposition nor Spectranetics' compliance with its requirements through a press release issued on the very day that the FDA/ICE search warrant was executed.[2]

Plaintiff, however, tries to hide from the established case law holding that companies do not have a duty to accuse themselves of uncharged allegedly unlawful acts. Although this litigation relies upon the faulty premise that such a duty exists, Plaintiff relegates discussion of this core issue to a single footnote buried within the 66 footnotes in the Opposition. (Opp. 19 n.23.) Plaintiff's similarly meager effort to distinguish one or two cases on this issue does not undermine the general rule that companies do not have a duty to disclose uncharged allegedly unlawful conduct. (MtD 15.)[3] Courts refuse to place companies "in the untenable position of either publicly confessing their potential misconduct before their guilt is properly determined by a court, or incurring liability for damages resulting from their failure to disclose the misconduct." Lewis v. Chrysler Corp., 949 F.2d 644, 652 (3d Cir. 1991).[4] Courts likewise do not want every potential violation of an underlying rule of state or federal law to become the basis of a claim for securities fraud. Id.

---

[2] Plaintiff argues that Defendants were obligated to accuse themselves of wrongdoing under Item 303 of SEC Regulation S-K. In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997), directly addresses and rejects this argument. Id. at 402-03. The court also agreed with the myriad other federal courts which have held that Item 303 provides no private right of action. Id. at 403 (collecting cases); see also Oran v. Stafford, 226 F.3d 275, 287-88 (3d Cir. 2000); Anderson v. Abbott Labs., 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001).

[3] See also Ind. St. Dist. Council v. Omnicare, Inc., 583 F.3d 935, 945 (6th Cir. 2009) (under 10(b), no duty to disclose alleged involvement in "'illegal' activities"); Kapur v. Usana Health Scis., Inc., No. 2:07-CV-00177DAK, 2008 WL 2901705, at *8 (D. Utah July 23, 2008) (same); In re AXIS Capital Holdings Ltd., Sec. Litig., 456 F. Supp. 2d 576, 586-88 (S.D.N.Y. 2006) (same); In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 377 (S.D.N.Y 2004) (same); Chan v. Orthologic Corp., No. Civ. 96-1514 PHX RCV, 1998 WL 1018624, at **16-17 (D. Ariz. Feb. 5, 1998) (same).

[4] Kapur, 2008 WL 2901705, at *8; Lopes v. Viera, 543 F. Supp. 2d 1149, 1186 (E.D. Cal. 2008); In re United Am. Healthcare Corp., No. 2:05-CV-72112, 2007 WL 313491, at *13 (E.D. Mich. Jan. 30, 2007).

As discussed in the motion to dismiss, In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997) – a case Plaintiff never addresses – is nearly indistinguishable from the facts here.  The Sixth Circuit rejected plaintiff's arguments that the company's record revenue and statements that it did not encourage unapproved uses of its products were false and misleading as a result of the company's failure to disclose that it had engaged in unlawful sales tactics.  Sofamor Danek, 123 F.3d at 400; see also Chan v. Orthologic Corp., No. Civ. 96-1514 PHX RCV, 1998 WL 1018624, at **16-18 (D. Ariz. Feb. 5, 1998) (no liability for failure to disclose alleged unlawful marketing of medical device even where company stated it was in compliance with law and disclosed revenue results allegedly inflated by unlawful sales).

III.    **Plaintiff's Effort To Allege a Misleading and False Statement Fails.**

Defendants clearly and accurately classified the statements that Plaintiff challenges into specific categories.  (MtD 19-29.)  The motion demonstrated why the statements in each of those categories of statements were neither false, misleading nor created a duty to disclose alleged unlawful conduct.  The Reform Act, in fact, requires such an analysis as "the complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).    Plaintiff, however, did not comply with these requirements in the Opposition; instead, it lumped together all of the alleged misleading statements into a single section hoping to obscure that it only offers conclusory allegations purporting to explain why the statements they challenge are allegedly false or misleading.[5]

---

[5] Indeed, Plaintiff not only fails to satisfy the Reform Act, but incorrectly asserts that the Act only raised

7

**A.    Spectranetics' Product Liability Risk Disclosure Was Not Misleading.**

Plaintiff mistakenly argues that Spectranetics had a duty to accuse itself of alleged uncharged, unlawful promotion of its products for the treatment of ISR based on a single statement made in Spectranetics' 2006 Form 10-K.    Defendants explained in the motion, however, that the statement Plaintiff challenges appears in the Company's lengthy Risk Disclosure which addresses potential product liability claims – not FDA compliance.  Thus, the Risk Disclosure was not rendered misleading simply because it included one sentence noting that "[w]e do not promote our products for off-label or otherwise unapproved usage." (CAC ¶ 92.)  As part of a risk disclosure, the statement helps excuse liability not create it; the statement itself and the risk disclosure as a whole did not even mention ISR; the risk disclosure, read in its entirety and in context, was clearly intended to provide warnings to stockholders about product liability claims, not FDA compliance; and Spectranetics had other risk disclosures that related to FDA compliance.  In short, the challenged statement merely expressed that Spectranetics may have product liability exposure regardless of whether the Company did or did not promote its products for unapproved uses.

Plaintiff's Opposition does not address most of these points.  Specifically, the Opposition fails to acknowledge that (1) the statement did not mention ISR; (2) it concerned product liability claims; and (3) there are no allegations of product liability exposure in this case.  The Opposition also wrongly asserts that statements in risk

---

the standard for pleading scienter, but not falsity.  (Opp. 9.)  The Tenth Circuit, however, has clearly held that "the PSLRA increased the burden on a plaintiff's pleading of the first element of a securities fraud action" – falsity.  Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1095 (10th Cir. 2003).

disclosures – like Spectranetics' product liability risk disclosure – create liability rather than excuse it. The two cases that Plaintiff cites have no bearing here as neither case involved a Section 10(b) claim or relied on post-Reform Act law. (Opp. 15 n.12.) Plaintiff's other argument -- that Spectranetics risk disclosures on FDA compliance were too general to excuse liability -- reflects a mistaken understanding of Spectranetics' argument. Defendants did not argue that the FDA risk disclosures absolved Defendants for allegedly misleading statements about product liability risk. Rather, the fact that Spectranetics had specific risk disclosures on FDA compliance showed that the risk disclosure Plaintiff challenges is about potential product liability exposure.

Furthermore, even if this statement relating to potential product liability claims is somehow viewed as a statement about FDA compliance (which it is not), Plaintiff still cannot assert a Section 10(b) claim based on such statement. Companies do not become obligated to disclose uncharged alleged violations of the law when they make general statements of legal compliance. (MtD 28). Thus, for example, in Omnicare, 583 F.3d at 941, the court held that the company's statement that it compl[ied] with all applicable federal and state laws and regulations" was not misleading even though the company was violating federal and state regulations. Id. at 941, 945-47; see also Chan, 1998 WL 1018624, at *18 (no liability for statement indicating compliance with law where company allegedly violated FDA regulations). Similarly, the court in Sofamor Danek addressed an almost identical argument and held, as discussed above, that a company was not liable under Section 10(b) for stating that it does not "encourage the

9

use of products for unapproved applications" even while it was actually doing so. Sofamor Danek, 123 F.3d at 397-98.[6]

### B. Spectranetics' Public Statements About Its Products Were Not Misleading.

Plaintiff improperly claims that Spectranetics became obligated to disclose allegedly unlawful conduct in promoting its product for ISR merely because it generally discussed its business in press releases and conference calls. Indeed, Plaintiff's theory of falsity constitutes little more than an effort to revive the theory that companies must disclose all material information in their possession to their stockholders – a theory that it acknowledges is legally unsupported – under the guise that a company must "speak the full truth" or otherwise ensure that its statements are complete when it says anything. (Opp. 13.) Regardless of whether this constitutes the law in the other jurisdictions, it is not the law here.[7]

---

[6] Plaintiff also tries to challenge this same risk disclosure based on the allegations that Spectranetics imported some guidewires from FMD in 2005 and some angioplasty balloons from BMT in 2007. (Opp. 14 n.10.) Plaintiff does not really believe that this alleged conduct rendered the risk disclosure materially misleading as it only makes the argument in a single footnote in its lengthy brief. (Id.) Plaintiff does not allege that Spectranetics ever attempted to sell these products to anybody, or ever received any money from sales of these products, or that the FMD guidewires and BMT balloons were even Spectranetics' products to promote. Plaintiff also never mentions the FMD guidewires or the BMT balloons in the nearly four page argument attempting to establish the materiality of the conduct challenged. (Opp. 22-26.) The risk disclosure is also entirely irrelevant as Plaintiff does not and cannot allege that there have been any product liability claims arising out of any alleged use of the FMD wires or BMT balloons, or that any adverse event reports involving the alleged use of these products have ever been filed with the FDA. Finally, as discussed in the motion, Plaintiff does not and cannot allege that (1) Spectranetics ever made any public statements about the potential transactions with FMD or BMT; (2) Spectranetics ever mentioned FMD or BMT in its conference calls or press releases; or (3) Spectranetics ever made any statements about whether it was or was not importing such products from outside the United States. (MtD 27.)

[7] Plaintiff's broad quotes concerning the duty to disclose do not even reflect the law in the jurisdictions from where the cases come. See, e.g., McNamara v. Bre-X Minerals Ltd., 57 F. Supp. 2d 396, 416 (E.D. Tex. 1999) (noting that the rule that "'a duty to speak the full truth arises when a defendant undertakes to say anything'…is not as absolute as one might gather").

As discussed in Defendants' motion, the Tenth Circuit has held that "[a] duty to disclose arises only where both the statement made is material, **and** the omitted fact is material to the statement in that it alters the meaning of the statement." (MtD 24 citing McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 998 (10th Cir. 2002) (emphasis added)). Thus, in McDonald, the court ruled that a company did not have a duty to disclose "keep whole" contracts applicable to a natural gas plant that ultimately increased corporate operating expenses by $77.2 million when it made public disclosures about plant financial performance, plant activity levels, and the acquisition of the plant. Id. at 995-96, 998. In the words of the court, these statements were not "any less true than they would have been had [the company] decided to volunteer that information" regarding the risks posed by the "keep whole" contracts. Id. at 998. Plaintiff has not satisfied these standards.

First, Plaintiff mischaracterizes the statements in the press releases and conference calls that it challenges. Plaintiff tries to argue that the majority of Spectranetics' statements mention ISR but the statements it uses to make this argument demonstrate just the opposite. For example, Plaintiff cites to paragraphs 105 and 128 in the CAC to argue that the statements mention ISR; however, Plaintiff has altered these statements by including bracketed language to make them appear to be about ISR when the actual statements did not include such language. (See Opp. 17 n.19; CAC ¶¶ 105, 128.) Second, as discussed in Defendants' motion, Plaintiff has included numerous large block quotes from Spectranetics' press releases and conference calls without indicating which specific language it actually challenges. (MtD

24-26.)  Third, the statements challenged in (albeit meager) detail, are – in fact –
entirely accurate.  The information about alleged ISR promotion would not "alter the
meaning" of the statements Plaintiff challenges because Spectranetics did see an
opportunity for its products in the treatment of ISR; it was conducting clinical trials to get
a specific indication for ISR; and it was training physicians to use its products.[8]

Finally, the principles that demonstrate that Defendants made no false or
misleading statements take on further importance when a plaintiff – like Plaintiff here –
tries to argue that defendants made a statement that required them to incriminate
themselves by admitting to violating the law.  In such circumstances, the plaintiff must
show that the allegedly undisclosed information did more than render any statement
incomplete, but must also actually allege that the purportedly undisclosed information
necessarily "undermin[ed]" the truth of the statement.  Zaluski v. United Am. Healthcare
Corp., 527 F.3d 564, 576 (6th Cir. 2008).  This is especially important where the
question as to whether a company violated the law turns on decisions made by external
parties like government regulators because companies cannot predict when, if ever, a
government regulator might find fault with its conduct.

---

[8] Plaintiff also suggests that it was misleading for Spectranetics to state that it was conducting studies on
whether the laser harms nitinol stents without disclosing that the Company had already done some
preliminary testing.  The securities laws, however, make clear that in cases involving pharmaceutical
products like this one, manufacturers have no duty to disclose to investors non-statistically significant
results even when making statements about the particular product at issue.  See In re Carter-Wallace,
Inc. Sec. Litig., 150 F.3d 153, 157 (2d Cir. 1998); see also Oran, 226 F.3d at 283-84.  Plaintiff has not and
cannot allege that the results of the preliminary testing in this case were statistically significant.  In
addition, it would have been more misleading for Spectranetics to have told its stockholders that it had
done tests that allegedly indicated that the laser damaged certain types of stents when such tests were
preliminary, were performed under conditions that would not be duplicated in patients, were not
statistically significant, resulted in only some non-structural damage, and when the testing done after
establishing a protocol with the FDA showed that "stents subjected to extensive fatigue testing following
laser interaction had no fatigue-related failures." (Zelichov Decl., Ex. 4 at 9; Ex. 17 at 1.)

**C.    Spectranetics' Accurate Disclosure of Past Revenue Results Were Not Misleading.**

Plaintiff has no response to the case law holding that Spectranetics did not have a duty to accuse itself of wrongdoing by reporting accurate revenue figures that might have included revenue from alleged unlawful activity.   Instead, Plaintiff sidesteps the issue by simply arguing that literally true statements can still be misleading.   Plaintiff cannot point to a single case, however, holding that accurate disclosure of past revenue results is misleading for failing to disclose that some of the revenue might have resulted from unlawful conduct.   The cases that address this issue – including Sofamor Danek, 123 F.3d at 401, Greenstone v. Cambex Corp., 777 F. Supp. 88, 91 (D. Mass. 1991), aff'd, 975 F.2d 22 (1st Cir. 1992), In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 377-78 (S.D.N.Y. 2004), and In re Marsh & McLennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452, 470 (S.D.N.Y. 2006) – have uniformly held that such accurate revenue figures are not misleading.   The Tenth Circuit has also ruled that "accurate reporting of historic successes does not give rise to a duty to further disclose contingencies that might alter the revenue picture in the future."   McDonald, 287 F.3d at 998.   Any other rule would completely eviscerate the principle that companies need not accuse themselves of uncharged, unlawful conduct because every company discloses its revenue figures.[9]

---

[9] Plaintiff's related argument that Spectranetics' SOX certifications were false and misleading because its financials were false and misleading does not work.   (Opp. 16 n.14.)   First, given that Spectranetics' financials were accurate, the SOX certifications were accurate as well.   Second, these certifications do not require the Company to guarantee "a company's compliance with [all] applicable laws and regulations," SEC, Management's Report on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports, 68 Fed. Reg. 36, 636, 640 (June 18, 2003), and relate only to a company's "compliance with the applicable laws and regulations directly related to the

**IV.    Plaintiff Has Failed To Allege Scienter Given That It Can Offer No Motive Or Particularized Facts Demonstrating Intent To Defraud.**

Plaintiff's argument that they have alleged scienter ignores the key holding -- and the reason it granted certiorari -- from the Supreme Court's decision in <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308 (2007). Thus, while Plaintiff acknowledges that scienter is satisfied only by "intent to defraud or recklessness," (Opp. 29), that the Reform Act raised the standard for pleading scienter, (Opp. 9), and that scienter requires both knowledge of wrongdoing **and** knowledge that "failure to reveal the potentially material fact would likely mislead investors," <u>City of Phila. v. Fleming Cos.</u>, 264 F.3d 1245, 1261 (10th Cir. 2001); (Opp. 29), it fails to note that the Supreme Court expressly held – thereby reversing the Seventh Circuit – that a court must "take into account plausible opposing inferences" suggested by Defendants. <u>Tellabs</u>, 551 U.S. at 314. Plaintiff similarly ignores that the Supreme Court held that "omissions and ambiguities count against inferring scienter." <u>Id</u>. at 310, 326. These standards applied correctly demonstrate that Plaintiff has not alleged a strong inference of scienter.

**A.    Defendants Acquired Stock During The Class Period Thereby Undermining Any Inference Of Scienter.**

Numerous courts, including the District of Colorado, have found that the absence of any stock sales by defendants weakens any inference of scienter. (<u>See</u> MtD 38.)

---

preparation of financial statements." <u>Id</u>. Third, the SOX certifications at most indicate that Spectranetics was in compliance with the law and, as discussed above, such statements do not give rise to a duty to disclose wrongdoing. Similarly, Plaintiff's argument that Defendants misled stockholders by putting the cause of Spectranetics' financial success at issue fails. Plaintiff does not identify any statements in which Spectranetics allegedly described the causes of its financial results and Plaintiff would still need to explain why any such statements are misleading (and not merely incomplete or not the full truth) and as discussed above, Plaintiff cannot do so. <u>See</u> Part III above.

Plaintiff tries to distinguish a couple of cases cited by Defendants, but it must ultimately concede that these cases hold that the absence of stock sales may "dull" or "undercut" any inference of scienter. (Opp. 39-40 n.52.) In addition, not only did all of the Individual Defendants hold their Spectranetics stock over the class period, nearly all of them actually **acquired** more shares. (See MtD 38, Exs. 5-10.) These acquisitions affirmatively rebut any inference of scienter. (MtD 38.)[10]

### B.   Plaintiff Has Not Alleged Recklessness That Reflects A Danger Of Misleading Investors.

Plaintiff's primary effort to overcome the facts that undermine scienter depends on theories already rejected by the Tenth Circuit and other courts throughout the country. The assertion that Defendants must have known about "off-label" promotion because it was material to Spectranetics' results, in combination with speculation from supposed confidential witnesses and an investigation of alleged FDA violations, does not show knowledge of any violation of the securities laws.[11]

---

[10]   Plaintiff tries to argue that it has pled a motive to defraud based on Spectranetics' alleged effort to sell itself and certain bonuses and consulting fees received by the Individual Defendants. These constitute nothing more than generic motives that do not give rise to an inference of scienter. See Fleming, 264 F.3d at 1269-70 ("generalized motives shared by all companies" and "all company executives" are insufficient to support a strong inference of scienter); see also Horizon Asset Mgmt. Inc. v. H & R Block, Inc., 580 F.3d 755, 766 (8th Cir. 2009) (receipt of corporate bonuses of as much as $630,000 do not show scienter). Moreover, Spectranetics was not acquired, thereby not realizing any "concrete" benefit from any such sale; and as for the Individual Defendants, Plaintiff cannot explain, for example, why Dr. Walker would allegedly commit fraud to earn $117,000 in consulting fees in 2008 but at the same time spend over $500,000 out of his own pocket during the same year purchasing Spectranetics stock at prices Plaintiff claims were artificially inflated by this alleged fraud, or how Mr. Geisenheimer's salary as CEO beginning in October 2008 gave him any motive to commit fraud between April 2007 and September 2008.

[11]   Plaintiff's argument that Defendants' scienter is evidenced by the "short time period" between Spectranetics' quarterly report with the SEC on Form 10-Q, filed on August 11, 2008, a newspaper article published in a Colorado newspaper on August 29, 2008, and the Company's disclosure of the FDA and ICE search warrant on September 4, 2008 (Opp. 40-41) fails because: (1) according to Plaintiff's own authority, the timing of the Company's disclosure has "limited probative value" as it was prompted by actions of the FDA and ICE independent of the Company (see Ezra Charitable Trust v. Tyco Int'l, Ltd.,

15

First, the Tenth Circuit has unambiguously rejected "allegations that a securities

fraud defendant, because of his position within the company, must have known a

statement was false or misleading" as a basis for alleging scienter. Fleming, 264 F.3d

at 1263-64 (internal citation and quotations omitted). Thus, unlike some other courts

that have held that a plaintiff can bolster a claim of scienter by alleging that the

undisclosed facts concerned the company's "core operations," the Tenth Circuit has not.

Cf. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1000 (9th Cir. 2009).   In

addition, even if the Tenth Circuit recognized the "core operations" exception to the

Reform Act's particularity requirements (which it has not), the theory does not apply

here because the facts alleged in the CAC – as opposed to Plaintiffs' subjective and

conclusory gloss on those facts – do not establish that off-label promotion constituted a

"core operation" for Spectranetics.   Plaintiff has **not** alleged facts showing that there

was a single sale of the Company's products for any off-label use, let alone that any

such sales were "so obviously material" to the Company.   See Fleming, 264 F.3d at

1261.   Moreover, even if such sales were alleged in the CAC, Plaintiff would also need

to allege that the sales resulted from unlawful off-label promotion – as opposed to

perfectly legal physician-initiated use – and Plaintiff has not done so.[12]

---

466 F.3d 1, 9 (1st Cir. 2006)); (2) Defendant Schulte's acquisition of additional shares of the Company during this time frame – just a mere five days before the execution of the search warrant (see MtD 38, Ex. 9) – indicates that Defendants had no idea prior to the execution of the search warrant that the FDA or ICE were contemplating actions against the Company; and (3) most federal courts have rejected similar arguments (see, e.g., Elam v. Neidorff, 544 F.3d 921, 930 (8th Cir. 2008); In re United Telecomms., Inc. Sec. Litig., 781 F. Supp. 696, 702-03 (D. Kan. 1991)).

[12]    Plaintiff also tries to rely on a Jeffries analyst report to argue that Defendants' alleged off-label promotion of its products was "material," but the Jeffries analyst report surmises only that all off-label use of Spectranetics products (which would include both legal and allegedly illegal use) constituted only $10 million of Spectranetics' sales. (Supp. RJN., Ex. 34.) Similarly, Plaintiff's allegations of internal modeling

Second, Plaintiff's allegations based on supposed information from Spectranetics' former employees have at least three fatal flaws. As an initial matter, courts have ruled that information from former company employees must be steeply discounted because such employees may well "have axes to grind." See Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 757 (7th Cir. 2007). Plaintiff claims that Higginbotham has been overruled in the Seventh Circuit but one panel of a Court of Appeals cannot overrule another. In addition, the Sixth Circuit adopted a rule similar to Higginbotham in Ley v. Visteon Corp., 543 F.3d 801, 811 (6th Cir. 2008), the Fifth Circuit did so in Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc., 537 F.3d 527, 535 (5th Cir. 2008), and district courts in the Tenth Circuit have done so as well, see, e.g., In re FX Energy, Inc. Sec. Litig., Nos. 2:07-CV-874 CW, 2:07-CV-938 DAK, 2:07-CV-966 DAK, 2009 WL 1812828, at *10 (D. Utah June 25, 2009).

Furthermore, Plaintiff has failed to allege any indicia of reliability for the information that it attributes to Spectranetics' former employees. As discussed in the accompanying motion to strike, Plaintiff likely did not even talk to CW1. In addition, even if it did, much of the alleged information attributed to CW1 pre-dates his purported tenure at the Company or concerns matters outside his alleged job description. (See MtD 31-32.) Plaintiff's attempt to make up for these deficiencies by referring to "[c]orroboration from multiple sources" is unavailing as CW2 and CW3 do not have any

---

and projections regarding the potential for future revenues of "up to $200 million" from sales of atherectomy products for off-label uses does nothing to show that current revenue from off-label promotion was "so obviously material" to Spectranetics. (CAC ¶ 118.) Plaintiff cannot even claim that Spectranetics' internal modeling and projections were reflected in any external projections made to stockholders.

bearing on what Plaintiff attributes to CW1. (Opp. 35.) Plaintiff's extensive reliance on Schlesinger's complaint is improper as well. Plaintiff has simply taken allegations wholesale from pleadings in another lawsuit, in direct violation of Rule 11 of the Federal Rules of Civil Procedure. (See MtD 30-31.) Despite Plaintiff's suggestion to the contrary, Schlesinger's complaint is clearly the sole basis for a number of allegations in the CAC (Opp. 33 n.41, cf. Opp. 32-33 (citing CAC ¶¶ 107, 108, 118)) and serves as the primary basis for the entire CAC given that Plaintiff seemingly made up CW1. In addition, the DOL rejected Schlesinger's claims and found that "there is no reasonable cause to believe that [Spectranetics] violated SOX." (Zelichov Decl., Ex. 11).[13]

Moreover, even if the reliability of Plaintiff's sources was not seriously questionable, the allegations purportedly attributed to them are too generalized and conclusory to support a strong inference of scienter. (See MtD 32-34.) These allegations assert merely in general terms that the Company promoted products for off-label uses, and that the Defendants were aware of this. (MtD 32-34; see also Opp. 32-34.) These allegations do not identify in any detail the specific conduct that constituted the alleged off-label promotion, or how that conduct violated the FDCA or related FDA rules and regulations; nor do they explain how Defendants supposedly knew of this conduct or knew that it was illegal. Such generalized, non-specific allegations are insufficient as a matter of law.[14]

---

[13]     The fact that Schlesinger and Spectranetics reached a settlement also fails to support a strong inference of scienter, both as a practical matter and as a matter of public policy. See Eshelman v. Orthoclear Holdings, Inc., No. C 07-1429 JSW, 2009 WL 506864, at *8 (N.D. Cal. Feb. 27, 2009).

[14] Plaintiff's lengthy discussions concerning Spectranetics' alleged importation of guidewires from FMD and angioplasty balloons from BMT in the scienter section of the Opposition are completely irrelevant

Third, Plaintiff's arguments based on the FDA/ICE investigation further establish that it is attempting to use the securities laws to make an end run on the ban on asserting any private right of action under the FDCA. Plaintiff refuses to acknowledge that when asserting claims of securities fraud, there is a difference between an investigation by the FDA and an investigation by the SEC. Moreover, Plaintiff does not address or distinguish the cases In re Ceridian Corp. Sec. Litig., 542 F.3d 240, 248-49 (8th Cir. 2008) or Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 628 n.2 (4th Cir. 2008), which held that even an active SEC investigation is "too speculative to add much, if anything, to an inference of scienter." See also Zaluski, 527 F.3d at 569, 577 (no scienter where criminal and civil investigations by government); Kushner v. Beverly Enters., Inc., 317 F.3d 820, 825, 829-30 (8th Cir. 2003) (no scienter where company subject to investigation for violation of Medicare rules).[15]

## C.    Plaintiff Failed To Allege That Defendants Acted To Mislead Spectranetics' Stockholders.

Plaintiff's entire Opposition with respect to scienter focuses only on arguing that the Defendants knew of or were reckless concerning violations of the FDCA. Plaintiff, however, never addresses that it must **also** allege that Defendants "knew that failure to reveal the potentially material fact would likely mislead investors." Fleming, 264 F.3d at

---

because Plaintiff has made no effort to argue that Spectranetics made any statements concerning those transactions. As discussed in the motion, Plaintiff must plead both falsity and scienter with particularity as to each defendant and each allegedly false statement. (MtD 12.) Plaintiff cannot argue that alleged knowledge on one issue demonstrates scienter on another.

[15]    Similarly, courts have refused to accord any weight to resignations or forced departures in making a determination of scienter because the person(s) involved may have resigned or been forced to leave for reasons unrelated to the alleged fraud. See Ceridian, 542 F.3d at 248-49; see also Zucco, 552 F.3d at 1002 (mere conclusory allegations of resignation or retirement cannot support a strong inference of scienter). Thus Plaintiff's attempt to plead scienter based on Defendant Schulte's resignation must also fail. Id.

1261. As explained in Defendants' motion, Plaintiff cannot do that here because courts have held that "ambiguity [in the rules applicable to defendants' conduct] counsels against a culpable reading" of any defendants' actions.   See In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 280 (S.D.N.Y. 2008); see also Funke v. Life Fin. Corp., 237 F. Supp. 2d 458, 468-471 (S.D.N.Y. 2002).   The FDA's rules concerning "off-label" uses are unquestionably vague and ambiguous.   Plaintiff mostly ignores this issue and instead makes the bald assertion that Defendants' conduct violated "clear" rules.[16] Plaintiff never responds to or disputes Defendants' discussion of the complexities inherent in the FDA's rules concerning the "off-label" use of drugs and medical devices. It makes no effort to allege facts that Defendants conduct crossed any of these ambiguous lines; Plaintiff does not argue that Defendants somehow knew their conduct violated such ambiguous rules; and Plaintiff does not allege that the Defendants intended to defraud Spectranetics' stockholders by not disclosing any such alleged violations.   Indeed, Plaintiff cannot allege or argue that Defendants did anything other than try to maximize the profitability of the Company for the benefit of Spectranetics' stockholders.[17]

---

[16] The FDA itself has admitted that its guidance "does not offer a bright line rule" to determine "when a specific indication for use is reasonably included within a general indication for use of a medical device." See Guidance for Industry:   General/Specific Intended Use (November 4, 2008) (available www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ucm073944.htm).

[17] The cases cited by Plaintiff do not hold to the contrary.   The court in In re Digi Int'l Inc. Sec. Litig., 6 F. Supp. 2d 1089, 1098 (D. Minn. 1998) found that there were "other circumstances suggesting fraud"; similarly, the court in In re Raytheon Sec. Litig., 157 F. Supp. 2d 131, 148 (D. Mass. 2001) was faced with "numerous instances of accounting legerdemain" which suggested "an application of GAAP that strays beyond the boundaries of reasonableness."

**V.    Plaintiff Failed To Allege Loss Causation Because Disclosure of Investigation Does Not Equate to Disclosure of Wrongdoing.**

The Supreme Court's decision in <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336 (2005) made clear that a plaintiff must allege that the drop in stock price was "proximately cause[d]" by disclosure of the truth and not by other factors. <u>Id</u>. at 342-43. This principle has caused courts to flatly reject the notion that a plaintiff can allege loss causation simply by arguing that the company's stock price dropped after a company announces a government investigation.[18]  Courts have so held because an investigation at most reveals that the company might have engaged in the alleged undisclosed conduct and not that it did.  <u>See, e.g.</u>, <u>Metzler Inv. GMBH v. Corinthian Colleges, Inc.</u>, 540 F.3d 1049, 1064 (9th Cir. 2008) (loss causation not pled where a disclosure reveals a "risk" or "potential" for fraudulent conduct).  In addition, a company's stock price is more likely to fall after such a disclosure "not [as] a result of the facts disclosed . . . but 'more logically occurred because the market feared that [the investigation]' would independently harm the corporation." <u>Williams</u>, 558 F.3d at 1141-42.[19]

---

[18] <u>See, e.g.</u>, <u>In re Maxim Integrated Prod., Inc. Sec. Litig.</u>, 639 F. Supp. 2d 1038, 1047 (N.D. Cal. 2009); <u>see also</u> <u>In re Williams Sec. Litig. – WCG Subclass</u>, 558 F.3d 1130, 1141-42 (10th Cir. 2009); <u>In re Hansen Natural Corp. Sec. Litig.</u>, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007); <u>City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.</u>, 388 F. Supp. 2d 932, 942 (S.D. Ind. 2005).

[19] The distinctions Plaintiff tries to draw between this case and the cases cited by Defendants do not show that Plaintiff has satisfied <u>Dura</u>'s "proximate cause" requirement. For example, Plaintiff's attempt to distinguish <u>In re Hansen</u>, 527 F. Supp. 2d 1142 is unavailing.  The distinction Plaintiff asserts – that <u>Hansen</u> only involved an announcement that the SEC requested voluntary production from the company as opposed to an outright declaration that they were conducting an investigation – demonstrates that even the *mere threat* of an investigation, as opposed to an *actual* investigation like in this case, can cause the stock price to plummet. <u>Id</u>. at 1162 (emphasis added).  Similarly, the cases Plaintiff cites to support its argument do not reflect the law in the Tenth Circuit as they all fail to acknowledge what the Tenth Circuit held in <u>Williams</u>: that the stock price is more likely to fall because of market fears that an investigation would independently harm a corporation.  (Opp. 44 n.57.)

Plaintiff's unsupported claim that the disclosure of the investigation revealed that Spectranetics' past revenue results included revenue from illegal conduct does not overcome the holdings of these cases. (Opp. 43.) No court has held that the accurate disclosure of past revenue results is misleading for failing to disclose that some of the reported revenue might come from alleged unlawful conduct. See Part III.C above. Plaintiff also suggests that the disclosure revealed that Spectranetics' results "going forward . . . would be impacted by the Company's inability to improperly market its products" (Opp. 43), but Plaintiff has not challenged any of Spectranetics' revenue projections. Thus, Plaintiff has not alleged that the announcement on September 4, 2008 revealed any concealed risk of securities fraud. Moreover, just like in Williams, Plaintiff acknowledges that Spectranetics' stock price likely fell because stockholders were worried about the results of the investigation. (CAC ¶ 15 (stock price drop "reflected the impact of the investigation").) Finally, Spectranetics only announced an FDA/ICE investigation – not an SEC investigation – on September 4, 2008, and Spectranetics stock price went up – not down – when Spectranetics disclosed the SEC investigation on September 25, 2008. (Zelichov Decl., Ex. 33.)

## VI.    Alternative Theories Cannot Save Plaintiff's Failed Rule 10b-5 Claims.

### A.    Defendants Cannot Be Liable For Statements They Did Not Make.

Plaintiff's effort to hold every Defendant liable for every statement in every press release, conference call and SEC filing fails. As an initial matter, the group pleading doctrine did not survive the Reform Act – as every Court of Appeals to have addressed the issue has held. (MtD 45-46.) In addition, Childs made only one non-actionable

22

statement.  (CAC ¶ 141.)  Signatures on SOX certifications do not establish liability for

reasons discussed above in Part III.C.  Moreover, Plaintiff's own authority demonstrates

that Plaintiff has not sufficiently pled Schulte's entanglement with any newspaper

articles. (Opp. 26 n.31); In re Sun Healthcare Group, Inc. Sec. Litig., 181 F. Supp. 2d

1283, 1292-93 (D.N.M. 2002).  Furthermore, Geisenheimer and Walker are not liable for

the Form 10-Ks they signed because they were outside directors. (MtD  46.) Plaintiff's

supposed authority to the contrary applies only to very limited specific situations not

applicable here.  Plaintiff's conclusory allegations that Geisenheimer and Walker "acted

as insiders" are insufficient.  (CAC ¶ 39); In re Nat'l Century Fin. Enter. Inc., 504 F.

Supp. 2d 287, 297-99 (S.D. Ohio 2007).  Finally, McGuire is not liable for statements

that he did not make on conference calls.  Even under the group pleading doctrine, a

person was not responsible for oral statements made by others. (See MtD 46 n.19.)

**B.      Plaintiff Cannot Relabel And Save Its Theory As A Claim Under
         Rules 10b-5(a) and (c).**

Plaintiff asserts in its Opposition that Defendants are liable for securities fraud

under Rules 10b-5(a) and (c) based on their alleged violations of other laws because

such conduct "artificially inflated revenues."  (Opp. 46.)  The Supreme Court in

Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc., 552 U.S. 148 (2008),

however, expressly rejected such a theory as it did not want the securities laws

regulating conduct "in the marketplace for goods and services [and] not in the

investment sphere." 552 U.S. at 160-62, 166-67.  Indeed, if a plaintiff could assert a

claim for securities fraud because a public company engaged in some alleged

underlying illegal conduct that arguably inflated revenue then all illegal conduct would

23

violate the securities laws.  The sole case that Plaintiff cites to support its argument

explicitly recognizes that other courts – including courts within the Tenth Circuit, see In

re Nature's Sunshine Products Sec. Litig., No. 2:06-CV 267 TS, 2008 WL 4442150 (D.

Utah Sept. 23, 2008) – have rejected Plaintiff's approach.  (Opp. 46.)  Moreover, the

court in Plaintiff's lone case expressly noted that its holding ran contrary to Stoneridge

but held that it believed that the Supreme Court did not really mean what it wrote.  (Opp.

46 (citing In re Micron Tech., Inc. Sec. Litig., No. CV 06-85-S-BLW, 2009 U.S. Dist.

LEXIS 13793, at **9-13 (D. Id. Feb. 23, 2009)).)

    Plaintiff's other argument -- that they somehow relied on the underlying conduct

itself (and that the misrepresentations merely reflected the results of a deceptive

scheme) -- similarly violates the Supreme Court's decision in Stoneridge.  In fact, the

Court expressly rejected the theory that "in an efficient market investors rely not only

upon the public statements relating to a security but also upon the transactions those

statements reflect."  Stoneridge, 552 U.S. at 160; see also Joseph v. Wiles, 223 F.3d

1155, 1163-65 (10th Cir. 2000) (no presumption of reliance by claiming that company

concealed unlawful conduct); Desai v. Deutsche Bank Sec. Litig., 573 F.3d 931, 938-42

(9th Cir. 2009).  Moreover, Plaintiff has alleged that Spectranetics did not disclose its

allegedly unlawful conduct thereby making it impossible for Plaintiff to claim that "the

market" relied and traded based upon such conduct.  (CAC ¶ 240.)

    Finally, Plaintiff cannot ignore the first 83 pages of the CAC on page 84 and

claim that the misrepresentations just resulted from a scheme and not the fraud itself

because courts uniformly hold that plaintiffs cannot turn claims based on misleading

statements – like Plaintiff's claim here – into a claim under Rules 10b-5(a) and (c).  (MtD 47-48.) [20]

### C.    Plaintiff Has Failed to Plead Control Person Liability.

Plaintiff's control person allegations depend on the various Defendants' positions with Spectranetics rather than facts that establish control.  See Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305-06 (10th Cir. 1998) (plaintiff must plead **facts** to show the defendant was a control person); see also In re Nat'l Century Fin. Enter., Inc., 553 F. Supp. 2d 902, 912 (S.D. Ohio 2008) ("status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20") (internal citations omitted).  In addition, as to Mr. Geisenheimer and Dr. Walker, Plaintiff cannot turn outside directors into insiders with conclusory unsupported assertions.

### CONCLUSION

For all the foregoing reasons, the CAC should be dismissed.

Dated:  December 18, 2009

/s/ Bruce G. Vanyo
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310-788-4400
Facsimile:  310-788-4471
Email:  bruce@kattenlaw.com

Counsel    for    Defendants    The
Spectranetics    Corporation,    Guy    A.
Childs,    Emile    Geisenheimer,    Jonathan
W. McGuire, and Craig M. Walker, M.D.

/s/ Stephen C. Schulte
WINSTON AND STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5890
Facsimile:  312-558-5700
Email:  sschulte@winston.com

Counsel for Defendant John G. Schulte

---

[20] Plaintiff also has no standing and has not alleged scienter for the reasons discussed above.