IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action No. 08-cv-02055-CMA-CBS, 08-cv-02078-MSK-BNB, 08-cv-02267-MSK-CBS, 08-cv-02420-PAB, 08-cv-02603-MSK-BNB)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

---

**STATEMENT OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
LEAD PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT**

---

Defendants The Spectranetics Corporation ("Spectranetics" or the "Company"), Guy A. Childs, Emile Geisenheimer, Jonathan W. McGuire and Craig M. Walker, M.D. (the "Individual Defendants" and collectively with Spectranetics the "Defendants") respectfully submit this Statement of Supplemental Authority in support of Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Class Action Complaint (the "Motion to Dismiss"). This Supplemental Authority sets forth additional information that bears on Defendants' Motion to Dismiss but became available only after Defendants had already filed their Reply in support of the Motion to Dismiss ("Reply"). See D.C.COLO.LCivR 7.1(E); EEOC v. The Vail Corp., Civil Action No. 07-cv-02035-REB-KLM, 2008 WL 4489256, at * 2 (D. Colo. Oct. 2, 2008).[1]

---

[1] Defendants' counsel have met and conferred with counsel for the other parties in this action, including on December 30 and 31, 2009, concerning the filing of this Supplemental Authority, and the other parties consent to the filing provided that the other parties shall have the right to file a five page response on or before January 11, 2010, a condition to which Defendants consent.

## SUPPLEMENTAL AUTHORITY

Plaintiff initiated this litigation in response to, and immediately following, the FDA's execution of a search warrant on Spectranetics on September 4, 2008. The primary claim set forth in the initial complaints and in the Consolidated Class Action Complaint ("CAC") filed thereafter was that Spectranetics failed to disclose to its stockholders that it was allegedly promoting its products for treatment of in-stent restenosis ("ISR"), an alleged off-label use of its products. Plaintiff made this claim even though the FDA was only investigating such charges. The FDA's investigation also appeared to be based in turn on a disgruntled former employee's claim that the Company's products were not safe for that use.

As discussed in Defendants' Motion to Dismiss, the first premise of Plaintiff's claim – that the Company's products were not safe for treatment of ISR – was destroyed almost immediately after the execution of the search warrant. Spectranetics submitted studies to the FDA showing that its products were safe for use in the treatment of ISR on September 11, 2008. (See Motion to Dismiss ("MtD") 5, 8; Declaration of Richard H. Zelichov in Support of Motion to Dismiss ("Zelichov Decl."), Ex. 4 at 9; Ex. 17 at 1.) These studies began in December 2007 and were done in accordance with a protocol previously discussed with the FDA. (MtD 5, 8; Zelichov Decl., Ex. 4 at 9; Ex. 17 at 1.) In addition, in May 2009 Spectranetics submitted further data to the FDA, backed by clinical trials, showing the safety and effectiveness of the Company's products for the treatment of ISR. (See MtD 8; Zelichov Decl., Ex. 18 at 1.)

2

The second premise of Plaintiff's claim – that Spectranetics had to disclose to its stockholders that it was allegedly promoting its products for treatment of ISR – has now been destroyed as well. Specifically, on December 28, 2009, Spectranetics entered into a Non-Prosecution Agreement ("NPA") and related documents with the FDA that do not include any admissions that Spectranetics was promoting its products for ISR because the FDA did not require such admissions. (See Defendants' Request for Judicial Notice in Conjunction with Supplemental Authority ("Supp. Auth. RJN"), Ex. 35.) In addition to undermining Plaintiff's theory, the NPA adds emphasis to Defendants' argument in their Motion to Dismiss and Reply that Congress expressly determined that this kind of claim – whether a company was unlawfully promoting its products for off-label uses – should be left to FDA and not to private plaintiffs. One cannot end run the FDCA's ban on private rights of action by disguising a claim for violation of the FDCA as a claim for violation of securities laws (or other federal or state statutes). (See MtD 15-18; Reply 3-5.)

Lastly, Spectranetics' stock price reaction to disclosure of its settlement with the government underscores that Plaintiff has not alleged loss causation. Spectranetics' stock price jumped to $7.77 on announcement of the NPA and related documents thereby nearly reaching the same level in the midst of a global economic recession as before the FDA executed its search warrant on September 4, 2008. (See Supp. Auth. RJN, Ex. 40; see also Zelichov Decl., Ex. 33.)

Plaintiff may try to argue that the NPA and related documents somehow support rather than undermine its case because Spectranetics has made a limited number of

3

admissions in the NPA and agreed to pay a civil settlement of $4.9 million to the government.[2] This argument fails on both grounds. First, the NPA admissions concerning CORAL, CORAL REEF, FMD and BMT have no bearing on the securities case. The CORAL and CORAL REEF studies pre-date the relevant Class Period by over 2 years. Furthermore, as discussed in the Motion to Dismiss and Reply, Spectranetics never made any statements about or tried to sell the FMD guidewires or BMT balloons; thus any conduct with respect to these transactions cannot give rise to a claim of securities fraud. (See MtD 6-7, 27-29; Reply 10, fn 6, 18-19, fn. 14.)

Second, there are numerous reasons why companies settle matters that do not demonstrate any wrongdoing. See Eshelman v. Orthoclear Holdings, Inc., No. C 07-1429 JSW, 2009 WL 506864, at *8 (N.D. Cal. Feb. 27, 2009). Indeed, Spectranetics expressly denied any wrongdoing as part of the civil settlement. The settlement also pales in comparison to other company's settlements with the FDA (see, e.g., Supp. Auth. RJN, Exs. 36 ($430 million settlement with Warner-Lambert), 37 ($515 million settlement with Bristol-Myers Squibb Co.), 38 ($425 million settlement with Cephalon Inc.), 39 ($2.3 billion settlement with Pfizer, Inc.)) and courts have found no liability for securities fraud in other cases where there have been settlements with the government, including settlements much larger than the one at issue here. See Kushner v. Beverly Enterprises, Inc., 317 F.3d 820, 825, 829-830 (8th Cir. 2003) (no securities fraud even

---

[2] Plaintiff may also try to claim that the Corporate Integrity Agreement accompanying the NPA provides additional support for its claim. However, this Agreement actually weakens Plaintiff's case because it specifically reflects that Spectranetics had internal controls in place even before the execution of the search warrant. In addition, any additional controls constitute subsequent remedial measures that may not be used as evidence of liability. See Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 760 (7th Cir. 2007); Pugh v. Tribune Co., 521 F.3d 686, 695 (7th Cir. 2008).

where company had pled guilty to a crime, paid a criminal fine of $5 million to the government, and paid $170 million to the government in a civil settlement); <u>Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.</u>, 583 F.3d 935, 941, 943-947 (6th Cir. 2009) (no securities fraud even where company settled with government for $102 million and president charged with fraud); <u>see also</u> <u>Glazer Capital Management, LP v. Magistri</u>, 549 F.3d 736, 740-749 (9th Cir. 2008) (no securities fraud even where company entered into non-prosecution agreement and paid a fine to the government).

In short, the recently executed NPA and related documents fatally undermine Plaintiff's primary claim. These documents directly contradict Plaintiff's assertion that Spectranetics had to disclose to its stockholders that it was allegedly promoting its products for treatment of ISR; they also underscore that neither Plaintiff nor the Court can supplant the role of the FDA in deciding such claim. For these reasons, and those set forth in Defendants' Motion to Dismiss and Reply, the CAC should be dismissed.

Dated: January 4, 2010

*/s/ Richard H. Zelichov*
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310-788-4400
Facsimile: 310-788-4471
Email: richard.zelichov@kattenlaw.com

*Counsel for Defendants*
*The Spectranetics Corporation,*
*Guy A. Childs, Emile Geisenheimer,*
*Jonathan W. McGuire, and*
*Craig M. Walker, M.D.*