IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action No. 08-cv-02055-CMA-CBS, 08-cv-02078-MSK-BNB, 08-cv-02267-MSK-CBS, 08-cv-02420-PAB, 08-cv-02603-MSK-BNB)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE CONSOLIDATED CLASS ACTION COMPLAINT

Lead Plaintiff ("Plaintiff") respectfully submits this Opposition to Defendants' Motion to Strike the Consolidated Class Action Complaint ("Motion to Strike"). Defendants moved to strike the entire Complaint. Alternatively, they moved to strike the allegations contained in the Complaint which rely upon the substance of the communications related by CW1 to the Plaintiff. Defendants failed to show that either option is warranted.

**I. Preliminary Statement**

Defendants spend ample time in the Motion to Strike articulating, *inter alia*, pleading standards for falsity and scienter under the Securities Exchange Act of 1934 and why stockholders look to former employees as confidential witnesses[1]. *See* Motion

---

[1] It is commonplace for plaintiffs in class action securities law suits to rely on former employees of a corporate defendant to provide the factually specific detailed allegations required to survive a motion to dismiss. Plaintiffs designate these individuals as "confidential witnesses" because revealing the names of witnesses could lead to retaliation or other undesired consequences. It is with these public policy considerations in mind that courts have consistently held that plaintiffs are not required to reveal the names of their confidential witnesses at the motion to dismiss stage. *See, e.g., Adams v. Kinder-Morgan*, 340 F.3d 1083, 1101-02 (10th Cir. 2003); *Novak v. Kasaks*, 216 F.3d 300, 303 (2nd Cir. 2000); *In re Daou*

to Strike at 3-4. However, notably absent from the Motion to Strike is a single citation to the law governing when a court may grant a motion to strike. More alarming than this failure, however, is Defendants' conclusion: "**Plaintiff has either made up the description of CW1 and/or his status as an unrepresented party and/or where it got the information attributed to him.**" *See* Motion to Strike at 5.

To reach this conclusion, Defendants first contend that the person they believe to be CW1 is represented by counsel. Defendants then cite to communications with Plaintiff's Counsel in which counsel stated that their investigator ("Investigator") has not spoken with any former employees of Spectranetics represented by counsel. Armed with these facts, Defendants arrive at the outlandish conclusion that Plaintiff and Plaintiff's Counsel had "made up the description of CW1," lied about talking to an "unrepresented party," or misattributed information from another source to CW1; rather than the obvious conclusion that Plaintiff's Counsel were accurate when they represented to Defendants that CW1 was *not* represented by counsel.

Defendants' Motion to Strike must be denied for three reasons. First, CW1 repeatedly informed the Investigator that he was not represented by counsel. Second, the document which Defendants rely upon to establish an attorney-client relationship between Obinna Adighije and Mr. Blume do not even establish such a relationship relevant to these proceedings. Third, Defendants have failed to make an adequate legal or factual showing that they have met the heavy burden of a motion to strike under Fed. R. Civ. P. 12(f).

---

*Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 146-47 (3d Cir. 2004).

2

### A. CW1 Has Repeatedly Informed The Investigator that He Is Not Represented By Counsel In This Matter[2]

In the Tenth Circuit, an attorney client relationship exists "when it is shown that the client seeks and receives the advice of the lawyer on the legal consequences of the client's past or contemplated actions." *Monus v. Colo. Baseball, 1993, Inc.*, 103 F.3d 145, 1996 WL 723338, at *7 (10th Cir. 1996) (citations omitted). The relationship may be inferred from the conduct of the parties. *Id.* Also, an important factor is whether the client believes that the relationship existed. *Id.*

When the Investigator initially contacted CW1, she specifically asked him whether he was a former employee of Spectranetics and whether he was represented by counsel.[3] *See* Greenbaum Decl. at ¶5. CW1 confirmed that he was a former employee of the Company and said that he was not represented by counsel. *Id.* CW1 confirmed numerous times during this call and subsequent calls that he was not represented by counsel and during one such call, requested the Investigator to provide him with independent counsel should the need later arise.[4] *Id.* at ¶¶ 5, 7-8.

On November 20, 2009, local counsel for Plaintiff received a telephone call from Robert C. Blume of Gibson Dunn and Crutcher LLP informing Plaintiff that the person

---

[2] All representations made on behalf of the Investigator are supported by the Declaration of Amy N. Greenbaum, submitted herewith ("Greenbaum Decl. at ¶__").

[3] The first thing the Investigator asks potential witnesses is whether that person is in fact a former employee of the corporate defendant and whether he or she is represented by counsel. She followed this preface with each witness in this case. In fact, several times during this investigation, the Investigator contacted individuals who did direct her to their attorneys for further information. Greenbaum Decl. at ¶3.

[4] Plaintiff has every reason to believe that CW1 is not represented by counsel and that the information CW1 provided is accurate. Should the Court require, counsel for Plaintiff is willing to provide documents to the Court, *in camera*, concerning the Investigator's contacts with CW1.

3

Mr. Blume believes to be CW1, Obinna Adighije, is his client.[5]  After receiving this news, Plaintiff's Counsel sought advice from a legal ethics professor regarding Mr. Blume's representations.  In reliance upon that advice, the Investigator re-contacted CW1 to ask specifically if he was represented by Mr. Blume.  *See* Greenbaum Decl. ¶8.  CW1 stated ***unequivocally*** that Mr. Blume did not represent him.[6]  *Id.*  The Investigator asked CW1 if he had signed a retainer agreement with Mr. Blume or any other lawyer and he responded "no."  *Id.*  Plaintiff's Counsel then accurately confirmed to Mr. Blume that they had not communicated with any represented party.  *See* Doc # 110-3.

Defendants' motive is apparent.  Faced with a highly detailed and credible complaint, Defendants make a desperate attempt to discredit the testimony of CW1 and/or Plaintiff's Counsel by moving to strike it from the Complaint.  Recognizing that the person they believe to be CW1 had never retained them, it appears they belatedly sent Mr. Blume to solicit the retention of the individual they believe to be CW1.  CW1 informed the Investigator that Mr. Blume has harassed him in ways unbecoming of his position in an attempt to obtain his retention.  *See* Greenbaum Decl. ¶8. CW1 told the Investigator that this behavior was a cause for fear and concern for him.[7] *See Id.*

---

[5] Defendants innocently claim that they "only recently obtained information upon which this motion is based."  However, despite CW1's identity being ***so obvious*** to Defendants (Childs Decl. at 3 and Zelichov Decl. at 2), Mr. Blume, who apparently, with Katten Muchin, also represents Spectranetics, only contacted Plaintiff about CW1 on November 20, 2009, two days after Plaintiff filed its opposition to Defendants' Motion to Dismiss and nearly ***3 months after the Complaint was filed***.

[6] Conspicuously absent from Defendants' motion and affidavit is any mention of who pays for Mr. Blume's services and who Mr. Blume actually represents.  If Mr. Blume represents Spectranetics, he has a clear conflict of interest in also representing CW1.

[7] Plaintiff prefers not to provide details of his conduct as reported to the Investigator at this time, but will do so if the Court requests.

4

### B. Defendants' "Proof" That CW1 Was Represented By Counsel Is Inadequate And Does Not Evidence An Attorney-Client Relationship

Under Colorado law, an attorney client relationship may be formed upon a contract that is either express or implied from the conduct of the parties. *Monus*, 1996 WL 723338, at *7. "In either case, the parties must agree on all essential terms of the relationship, as evidenced by the parties' manifestations of mutual assent." *Int'l Tele-Marine Corp. v. Malone & Assocs., Inc.*, 845 F. Supp. 1427, 1431 (D. Colo. 1994).

***Defendants do not submit an actual retainer agreement between the person they claim to be CW1 and Mr. Blume; nor do they submit a current affidavit from the individual they claim to be CW1, or from Mr. Blume himself, stating that Mr. Blume is CW1's lawyer.***

Instead, Defendants submit as Exhibit A to the Declaration of Richard A. Zelichov (Doc. #110), a document that Defendants claim establishes an attorney client relationship between Obinna Adighije, whom they presume to be CW1, and Mr. Blume. Exhibit A is titled "Affirmation and Undertaking for Advancement of Expenses Pursuant to Delaware General Corporation Law § 145(c) and the Bylaws of the Spectranetics Corporation" ("Affirmation") and is dated October 21, 2007. This document states that in order for Spectranetics to advance expenses to Mr. Adighije ***in connection with the pending investigation by the U.S. Food and Drug Administration and the U.S. Immigration and Customs Enforcement (the "Investigation),"*** Mr. Adighije was required to sign the Affirmation. In the document, Mr. Adighije affirmed that he was advised by legal counsel with regard to signing the Affirmation--that legal counsel was Mr. Blume.

5

It is based on the Affirmation **alone** that Defendants contend that CW1, whom they assume to be Mr. Adighije, is represented by counsel.[8]  This case involves the veracity of statements Defendants made to the public—not the FDA/ICE investigation itself.[9]

Assuming, *arguendo*, that CW1 is Obinna Adighije (and Plaintiff does not concede this), and even if CW1 signed a document like the Affirmation submitted as Exhibit A to the Declaration of Richard H. Zelichov, the document is clear that it does not purport to establish an attorney client relationship beyond advising Mr. Adighije of his rights regarding the Affirmation.  It is an indemnification contract that allows the Company to advance expenses to the signatory in his "capacity as an agent of the Company" and solely "in connection with the pending investigation by the U.S. Food and Drug Administration and the U.S. Customs Enforcement."  Defendants concede in their Motion to Strike that this purported representation was limited to "the FDA investigation."  Motion to Strike at 3.  The Affirmation in no way suggests or supposes that Mr. Blume represents Mr. Adighije beyond the need for advice pertaining to signing the Affirmation.[10]

All communications between the Investigator and CW1 were proper and ethical,

---

[8] However, Mr. Blume's involvement with Mr. Adighije, based on the current record, is limited to the Affirmation only.  Based on Mr. Blume's efforts to secure CW1's representation after the Consolidated Complaint was filed, it is clear that even Mr. Blume recognizes the limitation of this Affirmation (assuming, *arguendo,* that CW1 and Mr. Adighije are the same person).

[9] CW1 informed the Investigator that he was never contacted by any government agents or investigators in connection with the federal investigations of Spectranetics' marketing practices or any other matter. *See* Greenbaum Decl. ¶9.

[10] The Affirmation is dated October 21, 2007 – and according to an article from the *Colorado Springs Gazette*, dated October 22, 2008, entitled "Spectranetics Names New President" (attached hereto as Exhibit 4), Mr. Adighije officially ceased to be "an agent of the Company" on October 21, 2008.  Thus, there is a question as whether the contract submitted is enforceable at all.

and the Investigator operated under the belief that CW1 was not represented by counsel—a rational belief based upon CW1's numerous and continued confirmations that he was not represented by any counsel. *See* Greenbaum Decl. ¶10. CW1 provided information to the Investigator voluntarily and of his own free will. In fact, the Investigator spoke with CW1 no fewer than 6 times over the course of the investigation. Importantly, not all communication between CW1 was initiated by the Investigator—CW1 *voluntarily* called the Investigator on more than one occasion. [11]

## II. Defendants' Fail To Meet The Heavy Burden Of A Motion To Strike

Defendants' failure to provide a single citation to law governing motions to strike is unsurprising. Motions to strike under Rule 12(f) of the Federal Rules of Civil Procedure are disfavored. *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (citing 5 Wright & Miller, Federal Practice and Procedure § 1380, at 783 (1969)). *See also Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006) ("Motions to strike are a severe remedy, and as such are generally disfavored."). To prevail on a motion to strike, the movant must show that the allegations in question have no bearing on the controversy and that he has been prejudiced. *Sierra Club v. Young Life Campaign, Inc.,* 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). The burden of proof is a heavy one. *Id. See also Roderick Revocable Living Trust v. XTO Energy, Inc.*, No. 08-1330, 2009 WL 603641, at *2 (D. Kan. Mar. 9, 2009) (describing

---

[11] Even if CW1 was represented by counsel, a client may waive any attorney client privilege. *See Quinn v. City of Evans Police Dep't*, No. 07-2280, 2008 WL 4587247, at *2-3 (D. Colo. Oct. 15, 2008) (voluntary disclosure of attorney client privilege information waives the privilege).

7

defendants' burden as "demanding.").[12]  Given these requirements, it is not surprising that motions to strike entire pleadings are highly unusual and rarely granted.  *Leviton Mfg. Co., Inc. v. Zhejiang Dongzheng Elec. Co.,* No. 05-0301, 2006 WL 4060663, at *1 (D.N.M. Sept. 18, 2006) (denying motion to strike and noting that "Courts view motions under rule 12(f) with disfavor…and rarely grant them."); *Hill v. Cray Research, Inc.*, 864 F. Supp. 1070, 1073-74 (D.N.M. 1991) (same).

Motions to strike parts of a pleading ordinarily are made to eliminate allegations or statements that the movant believes to be redundant, immaterial, impertinent, or scandalous.  Fed. R. Civ. P. 12(f); *Echostar Satellite, LLC v. Splash Media Partners, L.P.*, No. 07-2611, 2008 WL 1766574, at *1 (D. Colo. Apr. 14, 2008). Even then, it is settled that such a motion should be denied unless it can be shown that no evidence in support of the allegation would be admissible.  *Shell Oil*, 605 F. Supp. at 1085 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  Only allegations "so unrelated to plaintiff's claims as to be unworthy of any consideration" should be stricken.  *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F. Supp. 643, 644 (D. Colo. 1982)).[13]  In other words, if a plaintiff pleads evidentiary facts that aid in giving a full understanding of the complaint as a whole, the allegations should not be stricken.  *Countrywide Home Loans, Inc. v. Arbitration Alliance Int'l., LLC*, No. 04-152, 2004 WL

---

[12] Defendants failed to comply with Local Civ. Rule 7.1 (c) which requires Defendants to state the rule or statute under which a motion is filed.

[13] *See, e.g., Kimpton Hotel & Rest. Group, LLC v. Monaco Inn, Inc.*, No. 07-1514, 2008 WL 140488, at *2  (D. Colo. Jan. 11, 2008) (denying defendant's motion to strike by rejecting defendant's claim that allegation "is not fact, but merely Plaintiff's pure speculation"); *Bd. of County Comm'rs of the County of La Plata, Colo. v. Brown Group Retail, Inc.*, No. 08-855, 2009 WL 2514094, at *4 (D. Colo. Aug. 14, 2009) (denying defendant's motion to strike portions of the complaint based merely on the possible semantic problem with the allegations).

987131, at *2 (D. Utah Apr. 14, 2004) (denying motion to strike because the allegations "are brought in the context of Plaintiffs' theory of the case, which Defendants are free to challenge in the course of motions and other pleadings").

Importantly, Defendants do not provide under which of the previous four theories their Motion to Strike should be granted, nor any discussion connecting their allegations to the applicable law. Defendants fail to make the necessary showing under each option.

### A. The Allegations Attributed to CW1 Are Not Scandalous

If the motion to strike alleges the contentious matter is scandalous, such allegations will be stricken "only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997). Striking relevant allegations as scandalous requires meeting this standard, *in addition to* a showing of unnecessary detail. *Id.* Defendants do not contend that the statements attributable to CW1 are anything approaching scandalous and thus fail to meet these standards.

### B. The Allegations Attributed to CW1 Are Not Redundant

If the motion to strike alleges the contentious matter is redundant, such allegations may be stricken if, for example, claims or allegations are duplicative. *See Asten v. City of Boulder*, No. 08-845, 2009 WL 2766723, at *4 (D. Colo. Aug. 26, 2009). Defendants do not claim in the Motion to Strike that CW1's allegations are redundant. As described in Section IIC, the allegations attributed to CW1 are detailed, relevant and corroborated by other CWs, the whistleblower complaint, and the Company itself.

9

### C. The Allegations Attributed to CW1 Have a Clear Bearing on the Case

A motion to strike based on the materiality of the challenged statements should also be denied unless the *movant* can show that the allegations have "no essential or important relationship to the claim for relief, or a statement of unnecessary particulars in connection with that which is material." *Dean v. Gillette*, No. 04-2100, 2004 WL 3202867, at *1 (D. Kan. June 8, 2004) (citations omitted).

In this case, Defendants made no such showing. The allegations attributed to CW1 have a clear bearing on the case, are sufficiently detailed and are relevant to the "controversy at issue," because they speak to the very issue of the case—whether Defendants knowingly made false and misleading statements of material fact and/or omitted to disclose material facts concerning (1) their illegal off label promotion of medical devices (¶¶117-126, 165)[14], (2) their promotion and testing on humans of foreign non-approved medical devices (¶¶96-100, 169-171), (3) their generation and recognition of a material portion of the Company's revenue by the sale of the Company's medical devices intended for unapproved use (¶¶117-120); (4) their improper payments to medical professionals, including Defendant Dr. Walker, who participated in certain clinical studies for the Company evaluating medical devices not approved for use in humans by the FDA (¶¶97, 120, 122, 171); (5) the Company's lack of effective regulatory and compliance controls (¶150), and (6) the Company's withholding of data from the FDA that indicated that nitinol stents were damaged by use with lasers (¶150).

---

[14] References are to paragraphs in the Complaint.

### D. There is Ample Evidence to Support the Allegations Attributed to CW1

If a motion to strike asserts the grounds that the matter is impertinent, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Kimpton Hotel & Rest. Group*, 2008 WL 140488, at *1 (citing *Shell Oil*, 605 F. Supp. at 1085 (citation omitted)).

Again, Defendants have made no such showing. CW1's claims do not exist in a vacuum and are corroborated. For example, CW2, a Former Territory Account Manager for Spectranetics between March 2005 and September 2007, confirmed that the Company instructed its employees that ISR in the leg was one of the indications for which the laser system was FDA approved (¶109) when, in fact, the laser **had not** been approved by the FDA for this use. CW2's allegations support CW1's claim that the Company had its employees promote the laser for off label use.

In addition, CW1's allegations are corroborated by Scott Schlesinger, the former Director of Marketing who filed a civil complaint against Spectranetics alleging that the Company fired him for confronting Company officials about their illegal behavior, including off label marketing, failure to report adverse effects of nitinol testing on stents, illegally testing products on humans, and the Company's lack of effective regulatory controls. ¶¶89, 108, 118, 149, 161-163, 172, 174-175.

Finally, the Company itself corroborates the allegations made by CW1. In a Form 8-K issued by the Company on December 30, 2009, the Company announced that it had settled claims resulting from the federal criminal investigation by the Department of Justice into the very same activity alleged in Plaintiff's Complaint. The

11

Company explained that it had entered into a Civil Settlement Agreement and a Non-Prosecution Agreement with the government.[15]  Pursuant to the terms of those agreements, the Company agreed to pay the United States $4.9 million in civil damages plus a $100,000 forfeiture to avoid criminal prosecution.[16]

According to the Non-Prosecution Agreement, Spectranetics **admitted** that during the Class Period, the Company imported and distributed the FMD guidewires and the BMT balloons for illegal testing on humans **with knowledge** that these products lacked approval or clearance from the FDA.  See Exhibit 3, at pp. 10-11, attached hereto.  Plaintiff makes these same allegations in the Complaint, supported by specific and detailed allegations from CW1.  ¶96-100, 169-171.  Spectranetics also admits in the Non-Prosecution Agreement that the Company lacked effective regulatory and compliance controls in that the Company failed to meet its reporting obligations to FDA regarding studies named "CORAL" and "CORAL REEF."  See Exhibit 3, at pp. 8-9, attached hereto.  The Complaint also makes allegations that Defendants lacked effective regulatory controls.  ¶150.

Finally, the Company corroborates CW1's allegations that the Company knew about the illegal off-label marketing.  In its candid answer to Schlesinger's whistleblower complaint in Colorado state court, Spectranetics admitted that numerous Spectranetics officials were already aware of the off-label compliance issues raised in Schlesinger's complaint.  Spectranetics admitted that the "off-label compliance issues that Mr.

---

[15] The Company announced in its Form 8-K that it also entered into a Corporate Integrity Agreement with the Office of the Inspector General and the Department of Health and Human Services.

[16] The Form 8-K, the Civil Settlement Agreement fand the Non-Prosecution Agreement are attached hereto as Exhibits 1, 2 and 3 respectively.

12

Schlesinger raised were already recognized by numerous Spectranetics employees, including Will McGuire, who even at that time had the Company's best experts working to make sure the Company was and is in compliance." ¶211.

### E. Defendants Have Not Been Prejudiced

Defendants' Motion to Strike also fails because Defendants cannot show that they have been prejudiced. A showing of immateriality or impertinence *must* be coupled with prejudice to the movant, in order to properly implicate the striking of pleadings. *Webster v. Nations Recovery Center, Inc.*, No. 09-1685, 2009 WL 2982649 (D. Colo. Sept. 15, 2009). "Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Dean*, 2004 WL 3202867, at *1.

As with all the other requirements necessary to sustain a motion to strike, Defendants fail to satisfy this one. Even if Defendants made a showing here of impertinence or immateriality (which they do not), Defendants' motion to strike must fail because Defendants have neither alleged nor shown prejudice by CW1's allegations.

### F. The Claims Raised in the Motion to Strike Should Have Been Made in the Motion to Dismiss

Finally, after being unable to satisfy (or even articulate) any of the requirements for moving to strike a pleading under Rule 12(f), Defendants filed a Motion to Strike because, procedurally, they knew that due to their failure to challenge CW1's testimony in their Motion to Dismiss, they were precluded from raising it in their contemporaneously filed Reply Brief (Docket No. 108). *See Johnsen v. Town of Grand Lake*, No. 05-1169, 2006 WL 686487, at *2 n.4 (D. Colo. Mar. 17, 2006) (factual

argument was not raised in the motion to dismiss, and court deem it waived); *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999) (court will not reconsider factual argument not explicitly raised on a motion to dismiss).[17]

### III. Conclusion

Defendants have failed to show that CW1 was represented by counsel (including Mr. Blume) and failed to provide legal authority or factual arguments under which CW1s allegations should be stricken even if this Court determines they were represented by counsel. Defendants' Motion to Strike should be denied in its entirety.[18]

Dated: January 8, 2010

Respectfully submitted,

**The Shuman Law Firm**

s/ Kip B. Shuman
Kip B. Shuman
885 Arapahoe Avenue
Boulder, CO 80302
Tel: (303) 861-3003
Fax: (303) 484-4886
Kip@Shumanlawfirm.com

*Counsel for Lead Plaintiff*

**Labaton Sucharow LLP**
David J. Goldsmith
Mark S. Goldman
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
dgoldsmith@labaton.com
mgoldman@labaton.com

*Counsel for Lead Plaintiff*

**Brower Piven,
A Professional Corporation**
Charles J. Piven
1925 Old Valley Road
Stevenson, Maryland 21153
Tel: 410-332-0030
Fax: 410-685-1300
piven@browerpiven.com

*Counsel for Lead Plaintiff*

---

[17] *See also Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007) (argument waived where they raised it for the first time in their reply brief); *Full Perspective Video Serv., Inc. v. Garcia*, No. 04-3038, 2005 WL 1667807, at *3 n.1 (N.D. Ill. July 18, 2005) (because Defendant raised that argument only in its reply brief, the argument was waived and cannot be considered at the motion to dismiss stage). *See also Salazar v. Furr's*, Inc., 629 F. Supp. 1403, 1411 (D.N.M. 1986) (denying motion to strike because "the Rule 12(f) motion is not an authorized nor a proper way to dismiss portions of a complaint.")

[18] If the Court is inclined to entertain Defendants' motion, notwithstanding (1) the fact that Defendants fail to meet the high burden on a motion to strike, and (2) the lack of any actual proof (including the failure of Defendants to submit an affidavit from Blume, Obinna Adighije or anyone that spoke ***directly*** to Obinna Adighije), the Court should, at most, allow discovery on the issue and/or order a hearing on the issue, where Blume is required, under oath, to discuss his relationship with Spectranetics and Obinna Adighije and where Blume is required to produce his alleged client.

**Certificate of Service**

      I hereby certify that the foregoing was filed with this Court on January 8, 2010 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

                                                                             s/ Rusty E. Glenn
                                                                             Rusty E. Glenn