IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02048-REB-KLM

(Consolidated with Civil Action No. 08-cv-02055-CMA-CBS, 08-cv-02078-MSK-BNB, 08-cv-02267-MSK-CBS, 08-cv-02420-PAB, 08-cv-02603-MSK-BNB)

In re SPECTRANETICS CORPORATION SECURITIES LITIGATION

## LEAD PLAINTIFF'S UNOPPOSED MOTION TO SERVE SUPPLEMENTAL CONSOLIDATED CLASS ACTION COMPLAINT & MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiff ("Plaintiff"), by its undersigned attorneys, files this motion to serve a supplemental consolidated class action complaint ("Supplemental Complaint"), and as grounds therefore states that under the facts and circumstances of this case, Plaintiff should be permitted to supplement the Consolidated Class Action Complaint (Dkt. 75; "Complaint") to include events that happened after the date of the filing of the Complaint.

The relief sought and grounds for this Motion are set forth in the incorporated Memorandum of Law. Pursuant to Local Rule 7.1(A), counsel for Plaintiff has conferred with counsel for the Defendants, who does not object to the relief requested in this Motion.[1]

---

[1] The parties agree that Defendants will not oppose or object to Plaintiff's motion to serve the supplemental complaint, that Defendants may file a 15-page response to the Supplemental Complaint no later than 30 days after Plaintiff files the Supplemental Complaint and/or the court deems it filed by granting the Motion to Serve Supplemental

(*continued* …)

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiff filed the Complaint on August 8, 2009. Since then, additional information has been made available which supports the allegations contained in what Plaintiff contends is a properly pled Complaint. *See* Plaintiff's opposition to Defendants' Motion to Dismiss ("MTD") (Dkt. 105). First, the federal government released to the public a copy of its application for a search warrant[2], which contained additional evidence supporting Plaintiff's claim that Defendants knowingly misled investors regarding the Company's failure to comply with FDA rules and regulations, including an affidavit supporting that application. Second, Spectranetics filed a Form 8-K announcing its entry into a Non-Prosecution Agreement ("NPA")[3] with the Department of Justice ("DOJ") and the United States Attorney's Office for the District of Colorado ("US Attorney's Office"), wherein Defendants admitted that they knowingly and illegally imported medical devices and tested them on human subjects, some of the very wrongdoing Plaintiff claims Defendants hid from investors.[4] This additional information, unavailable to Plaintiff at

---

(… *continued* )
Complaint (whichever is later), that Plaintiff shall have up to 30 days after the date Defendants file their response to the Supplemental Complaint to file an opposition thereto, and that Defendants shall have up to 21 days to file a reply after the date Plaintiff files its opposition.

[2] A copy of the Application for Search Warrant ("Search Warrant") is attached as Ex. G to the Supplemental Complaint.

[3] A copy of the NPA is attached as Ex. B to the Supplemental Complaint.

[4] Defendants also entered into a Civil Settlement Agreement ("CSA") (attached as Ex. A to the Supplemental Complaint) and a Corporate Integrity Agreement ("CIA") (attached as Ex. C to the Supplemental Complaint) with the government to settle claims stemming from the government investigation.

the time it filed the Complaint but available now, should be considered by this Court when it evaluates Defendants' MTD and, accordingly, Plaintiff's Motion to Serve Supplemental Complaint should be granted.[5]

## II. ARGUMENT

### A. Rule 15(d) of the Federal Rules of Civil Procedure Allows for Filing of Supplemental Complaint

Pursuant to Federal Rule of Civil Procedure 15(d), on motion and reasonable notice, a court may, on just terms, permit a party to supplement its pleadings to set out any transaction, occurrence or event that happened after the date of the pleading to be supplemented. Fed. R. Civ. P. 15(d). *See also Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008). Under Rule 15(d), leave to permit a supplemental pleading is "favored," *Ledford v. Astrue*, No. CV408-143, 2009 WL 5067455, at *1 (S.D. Ga. Dec. 23, 2009), and such leave should be "liberally granted." *Sierra Club v. City of Colo. Springs*, No. 05-01994, 2009 WL 1193513, at *2 (D. Colo. Apr. 29, 2009).

Motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard. *See Hettler v. Dody*, No. 06-781, 2007 WL 646266, at *6 (D. Colo. Feb. 28, 2007) (standard under Rule 15(d) is the same as under Rule 15(a)); *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) (same).[6] The

---

[5] Plaintiff has attached hereto the proposed Supplemental Complaint as Exhibit A. In addition, Plaintiff has attached as Exhibit B a black lined document comparing the Complaint to the Supplemental Complaint to facilitate a comparison between the two documents.

[6] *See also Alabama v. United States Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (D. Ala. 2005) ("[T]he slight differences between motions to supplement and motions to amend do not affect the standard of review in this case."); 6A Charles Alan
(*continued …*)

decision whether to grant leave to amend or supplement a complaint is within the discretion of the district court, but leave "should be freely given." *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (internal citations omitted). The Tenth Circuit has concluded that the timeliness of the amendment or supplemental pleading and the prejudice to a defendant are to be the crux of the inquiry.[7] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). In addition, an amendment or supplemental pleading may be denied if such an amendment or supplement would be futile. *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' ").

---

(… *continued* )
Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1504 (2d. ed. 1987) (noting that, for purposes of the standard of review, "practice under Rule 15(d) is the same as it is under Rule 15(a).").

[7] Indeed, there can be no prejudice to Defendants from the filing of the Supplemental Complaint in that it is the Defendants, themselves, who initially brought to the attention of this Court and placed in the record the Non-Prosecution Agreement which serves as one of the primary sources for the supplemental information contained in the Supplemental Complaint. *See* Defendants' Statement of Supplemental Authority in Support of Defendants Motion to Dismiss (Dkt. 114, Exhibit 35).

### B. Documents Made Available After Filing of Consolidated Complaint Support Claims Raised Therein

#### 1. Defendants Admit to Wrongdoing in the Non-Prosecution Agreement

On December 29, 2009, the Company filed a Form 8-K announcing that it had settled claims with the government relating to the federal criminal investigation. The Company entered into a CSA (Civil Settlement Agreement), a NPA (Non-Prosecution Agreement) and a CIA (Corporate Integrity Agreement) as part of the settlement.[8]

In Schedule A to the NPA, the Company *admits* that during the Class Period, the Company, "through the actions of officers, managers, agents and other employees acting on behalf of Spectranetics" imported and distributed the FMD guidewires and the BMT balloons for illegal testing on humans *with knowledge* that these products lacked approval or clearance from the FDA. These admissions demonstrate the veracity of CW1's statements as set forth in the Complaint and Scott Schlesinger's (the whistleblower) allegations about the FMD guidewire and BMT balloons. *See* Complaint (¶¶89, 96-100, 108, 118, 149, 161-63, 169-171, 172, 174-75). Defendants' admissions also provide additional evidence of scienter because in the NPA, Defendants not only admit to their participation in these undisclosed violations of FDA rules and regulations, they also agreed not to contest their involvement in the importing and testing of non-FDA approved medical devices in other proceedings such as this.

---

[8] Even though the government settled with the Company, the Individual Defendants (and others) are likely still being investigated. Notably, the Company did not settle claims with the FDA. Thus, the FDA retains authority to continue its own investigation
(*continued* …)

The Company also admits in Schedule A to the NPA that Spectranetics lacked effective regulatory and compliance controls in that the Company failed to meet its reporting obligations to the FDA regarding the "CORAL" and "CORAL REEF" Studies. Also, the NPA indicates that "[a]fter the execution of the search warrant, Spectranetics revised its FDA compliance procedures," and has taken certain remedial measures to that end. This shows the validity of Plaintiff's allegation that Spectranetics did not have the proper regulatory and compliance controls in place during the Class Period. NPA at 11 (listing remedial measures taken); See Complaint at ¶¶101, 150, 176, 199, 238.

### 2. The Civil Settlement Agreement Supports Plaintiff's Claims that Defendants Misled Investors

The CSA describes the subject of the government investigation including the Company's (1) importation, distribution and testing (on humans) of foreign, unapproved medical devices (BMT balloons and FMD guidewires), (2) illegal off label marketing of the Company's products for in-stent restenosis ("ISR") in peripheral artery disease ("PAD"), and (3) failure to meet reporting obligations to the FDA regarding a study named "CORAL." Plaintiff makes allegations regarding the foreign medical devices and the off label marketing in its Complaint. See Complaint. ¶¶96-100, 117-26, 165, 169-171).

Pursuant to the CSA, the Company agreed to pay the government $4.9 million. The NPA is referenced in the CSA and while it limits the Company's admissions to

---

(… *continued* )
and create its own remedies separate and apart from the DOJ and the US Attorney's office.

those expressly provided in the NPA, the CSA and NPA were made in contemplation of a settlement. This does not mean that the Company is innocent of the allegations made by the government. Rather, in lieu of being criminally prosecuted for *all* of the allegations investigated by the government, the Company admitted guilt to some.

### 3. The Corporate Integrity Agreement Demonstrates Defendants' Lack of Candor with the FDA

The CIA includes specific written standards, training, education, review, disclosure and reporting requirements. Specifically the CIA regulates Spectranetics' officers, directors, employees and contractors in their (1) promotion, marketing and advertising of Spectranetics products, and (2) clinical testing/investigation and reporting functions. Not surprisingly, these remedial measures intend on improving the very same behavior alleged in the Complaint—namely, the off-label marketing of Spectranetics products, the illegal importation and testing on humans of FMD guidewires and BMT balloons, the failure of the Company to report adverse effects of the laser on nitinol stents, and generally, the Company's failed regulatory and compliance controls. Thus, the CIA and the revised procedures discussed in the NPA provide additional evidence of scienter and further support Plaintiff's allegations that the Sarbanes-Oxley Certifications signed during the Class Period were false and misleading because the Company lacked adequate internal controls.

### 4. Evidence Cited in the Application for Search Warrant Further Supports Allegations Made in the Complaint

As a result of the settlement of the government investigation, Plaintiff's counsel's investigator ("Investigator") reviewed publically available documents on the settlement.

7

On January 11, 2010, the Investigator, unaware of the existence of a docket theretofore, discovered that the "Application and Affidavit for Search Warrant and Seizure" ("Search Warrant"), filed in connection with the federal raid on Spectranetics on September 4, 2009, was unsealed on November 9, 2009, after the Complaint was filed. *See United States v. Spectranetics Corp.*, No. 1:08-sw-05232-KMT (D. Colo. filed Sept. 2, 2008).

According to the Search Warrant, Special Agent Daniel Burke interviewed four confidential witnesses (CW1-CW4) who provided him with specific, detailed information to support the government's contention that the Company was engaging in (among other things) the (1) aggressive off-label marketing of the laser to treat ISR (*See* Search Warrant, ¶¶20-40), (2) illegal importation and testing (on humans) of the BMT and the FMD (*See* Search Warrant, ¶¶41-63), (3) failure to report adverse effects of nitinol stent testing to the FDA (*See* Search Warrant, ¶¶15-19), and (4) the Company's lack of effective regulatory controls (*See* Search Warrant, ¶¶15-19, 64-77). The search warrant provides a plethora of evidence which supports Plaintiff's claims that Defendants engaged in this unlawful conduct with scienter, while making statements to the market that they were in compliance with FDA rules and regulations.

### (a)  Evidence to Support Allegations of Off Label Marketing

The information provided by the government's CWs to Special Agent Burke support Plaintiff's allegations that the Company engaged in off label marketing. That information is detailed and includes: (1) numerous emails to doctors (including Dr. Gallino and Defendant Dr. Walker, which are referenced in the Complaint) discussing the off label marketing and use of ISR for PAD, (2) numerous emails to staff directing

them to promote the laser to treat ISR for PAD, (3) references to specific conversations with Defendants and other high level employees where staff is directed to promote ISR for PAD; (4) numerous emails discussing presentations made at medical conferences to promote ISR for PAD; (5) numerous emails discussing payments made to doctors and facilities to promote ISR for PAD. *See* Search Warrant, ¶¶20-40. For example, CW1 and CW4 informed Special Agent Burke that in January 2008, Defendant Schulte instructed them to "push ISR [for PAD]. I want the FDA to slap me on the hand if it's the wrong thing to do." *See* Search Warrant, ¶29.

### (b) Evidence to Support Allegations of FMD and BMT Importation/Testing

The government's CW1, CW2 (a current employee of Spectranetics when interviewed by Agent Burke), CW3 (a former Spectranetics employee who managed a clinical study) and CW4 provided additional support for Plaintiff's claim that the Company was engaged in the illegal importation and testing (on humans) of the BMT and the FMD devices.

### (i) FMD Guidewires

These CWs provide detailed information with respect to the FMDs including: (1) emails and invoices that discuss wire transfers to pay for the FMD devices, (2) tracking and shipping information of the FMD wires (from Japan to Spectranetics and from Spectranetics to doctors), (3) emails from Defendants to staff directing them to send FMD to doctors, (4) feedback from doctors filtered through staff and sent to Defendants. *See* Search Warrant, ¶¶41-54.

### (ii) BMT Balloons

With respect to the BMT balloons, these CWs provide detailed information including (1) the BMT evaluation forms provided by Spectranetics to doctors for use in evaluating the products on humans, (2) references to specific conversations between Defendants and various staff regarding the illegal testing of the BMTs, (3) emails from Knut Saureteig of BMT discussing the Company's relationship with BMT. *See* Search Warrant, ¶¶55-63.

### (c) Evidence to Support Allegations Regarding Nitinol Stent

CW1 provided Agent Burke with test results showing that the laser damaged nitinol stents during testing protocols and provided testimony that supports that the Company knew that the laser damaged nitinol stents and failed to report it to the FDA. *See* Search Warrant, ¶¶16-19.

### C. The Proposed Supplemental Complaint is Not Untimely or Made in Bad Faith

A motion to serve a supplemental pleading should be granted unless a plaintiff has unduly delayed in seeking the supplement. *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1197 (10th Cir. 2002) (discussing standard on motion to amend and citing cases). The important inquiry is not simply whether plaintiff has delayed, but whether such delay is undue. *Minter*, 451 F.3d at 1206. Plaintiff filed its Complaint on August 4, 2009 pursuant to a Scheduling Order set by the Court. Since that date, and pursuant to that same Order, a motion to dismiss was filed and fully briefed as of the filing of Defendants' reply brief on December 18, 2009 (Dkt. 108). Subsequent to the announcement of the settlement with the government, Defendants filed a Statement of

Supplemental Authority, informing the court of the settlement.[9]  Plaintiff responded to this supplement just over a week ago.  Plaintiff's proposed Supplemental Complaint is not untimely made or made in bad faith:  Plaintiff brought this information to the Court's attention as soon as practicable.  With the motion to dismiss ripe for review, the type of information contained in the Supplemental Complaint is exactly the type of information contemplated by Rule 15(d).  It contains information or events that occurred subsequent to the filing of the Complaint that support Plaintiff's allegations of Defendants' scienter. *See Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989) (reversing district court's denial of motion to supplement complaint because "plaintiff's motion was made promptly and concerned subsequently occurring facts relating to his original claim"). This information "will promote the economic and speedy disposition of the controversy between the parties" by providing the Court with the information it needs to sustain the Complaint. *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989).  Wright & Miller, *supra* § 1504.

**D.    The Proposed Supplemental Complaint Does Not Prejudice Defendants**

A defendant is prejudiced by a supplement or amendment to a pleading if the supplement will alter the focus of the case at a date that is too late for the defendants to adequately prepare for trial. *See e.g., Walker v. United Parcel Service, Inc*, 240 F.3d 1268, 1278 (10th Cir. 2001).  Absent prejudice, "a motion to supplement should be

---

[9] Defendants cannot complain that the proposed Supplemental Complaint is untimely or made in bad faith given that they brought the information regarding the government settlement to the attention of the Court only two weeks ago.

11

liberally granted." *Hicks v. Cadle Co,* No. 04-02616, 2007 WL 3090774, at *1 (D. Colo. Oct. 17, 2007) (considering prejudice to defendants and finding "no good reason exists to deny plaintiffs motion to supplement"). Defendants are not prejudiced by the proposed Supplemental Complaint because the focus of the case has not been altered by the proposed Supplemental Complaint. The supplemental information contains: (1) Defendants' own admissions to the behavior already alleged in the Complaint; and (2) additional information from the government's confidential witnesses supporting allegations already in the Complaint.

Defendants have addressed the admissions made in the NPA in their Statement of Supplemental Authority (Docket No. 114). They have also had the chance to attack, albeit unjustifiably, Plaintiff's reliance on the testimony of its own confidential witnesses, an argument which fails for the same reasons when it comes to the additional support for Plaintiff's claims provided by the government's witnesses. The descriptions of the government's confidential witnesses provided by Agent Burke in his Affidavit are detailed and specific. *See* Search Warrant, ¶¶15-77. Ultimately, information from confidential witnesses can be relied upon to establish scienter "provided [the confidential witnesses] are described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).

In addition, the filing of the Supplemental Complaint will not lead to significant delay. Courts usually find prejudice in allowing a supplemented or amended pleading when, for example, the case has progressed to discovery, *Walker v. United Parcel*

*Service, Inc,* 240 F.3d at 1278 (giving weight to whether supplement of a complaint would require additional discovery), or where plaintiff seeks to add new defendants late in the litigation, thus causing a delay in the proceedings. *See American Soc'y For Prevention of Cruelty to Animals v. Ringling Brothers & Barnum & Bailey Circus*, 246 F.R.D. 39, 44 (D.D.C. 2007). Neither situation applies here.

### E.     The Proposed Amendment Is Not "Futile"

There is no basis to conclude that filing Supplemental Complaint would be futile. A motion to amend (and also to supplement) may be denied as futile if the amendment would not withstand a motion to dismiss pursuant to Rule 12(b)(6). *See Kaufman v. American Family Mut. Ins. Co.*, No. 05-2311, 2008 WL 1806195, at *9 (D. Colo. Apr. 21, 2008); *See also Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408, 416 (S.D.N.Y. 2008) (granting leave to amend in response to the plaintiff seeking to amend its complaint to add new factual material) (collecting cases). "In ascertaining whether plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, and the allegations in the complaint must be accepted as true." *Innovatier, Inc. v. CardXX, Inc.*, No. 08-273, 2010 WL 148285, at *2 (D. Colo. Jan 8, 2010) (citations omitted). Moreover, "[a]ny ambiguities must be resolved in favor of plaintiff, giving him 'the benefit of every reasonable inference' drawn from the 'well-pleaded' facts and allegations in his complaint." *Id.* (granting motion to amend and resolving all ambiguities in favor of plaintiff).

The Supplemental Complaint is based on the same fundamental premise as the Complaint. Indeed, only 10 paragraphs are added to a Complaint that contains almost 250 paragraphs. This supplemental information, containing events or occurrences that happened and/or became knowable only after the filing of the Complaint serves the dual purpose of (1) informing the Court that Defendants' attempt to refute matters which the Company now admits to the federal government (*e.g.*, that the Company **knowingly and illegally** imported, distributed and caused testing of the FMD guidewires and BMT balloons on humans), **proving** scienter as to at least some of the allegations in the Complaint,[10] and (2) providing the Court with additional allegations of scienter based on specific and detailed allegations from other CWs. The statements identified as misleading in the Complaint remain the same; the Class Period remains the same; the named Defendants remain the same; Defendants' motivations to commit fraud are the same; and the effect on the Class remains the same. To be clear: Plaintiff has not added any new or additional claims. The basic premise of Plaintiff's claim remains that Defendants misled investors when they said the Company was acting in compliance with FDA rules and regulations and when they failed to disclose known violations of those same laws. The information in the Supplemental Complaint provides additional evidence of scienter to the already overwhelming evidence of scienter already pled, evidence that can aid the Court in ruling on its motion to dismiss. As pled and fully

---

[10] Though Plaintiff has certainly pled scienter with sufficient specificity (*see* Plaintiff's Opposition to the Motion to Dismiss at 28-41), there is absolutely no requirement that Plaintiff **prove** scienter at this stage of the proceedings.

briefed, Plaintiff's Complaint, and now Supplemental Complaint, is sufficient to survive a motion to dismiss.

### III.     CONCLUSION

Because the proposed Supplemental Complaint would further the interest of justice, the supplemental information is timely, there was no bad faith, there would be no prejudice to the Defendants, and the supplemented information would not be futile, the instant motion should be granted.

Dated: January 21, 2010                                                                 Respectfully submitted,

| **The Shuman Law Firm** | **Labaton Sucharow LLP** | **Brower Piven,**<br>**A Professional Corporation** |
|---|---|---|
| s/ Kip B. Shuman<br>Kip B. Shuman<br>Rusty Glenn<br>885 Arapahoe Avenue<br>Boulder, CO 80302<br>Tel: (303) 861-3003<br>Fax: (303) 484-4886<br>Kip@Shumanlawfirm.com<br>Rusty@Shumanlawfirm.com<br><br>*Counsel for Plaintiff* | David J. Goldsmith<br>Mark S. Goldman<br>Carol C. Villegas<br>140 Broadway<br>New York, NY 10005<br>Tel: (212) 907-0700<br>Fax: (212) 818-0477<br>dgoldsmith@labaton.com<br>mgoldman@labaton.com<br>cvillegas@labaton.com<br><br>*Counsel for Plaintiff* | Charles J. Piven<br>Yelena Trepetin<br>1925 Old Valley Road<br>Stevenson, Maryland 21153<br>Tel: 410-332-0030<br>Fax: 410-685-1300<br>piven@browerpiven.com<br>ytrepetin@browerpiven.com<br><br>*Counsel for Plaintiff* |